419 So.2d 990 (1982)
Theodore ELLIS, Plaintiff & Appellant,
v.
RAPIDES PARISH SCHOOL BOARD and Hartford Casualty Insurance Company, Defendants & Appellees.
No. 82-34.
Court of Appeal of Louisiana, Third Circuit.
August 31, 1982.
*991 Broussard, Bolton & Halcomb, Frank R. Bolton, Jr., Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, David A. Hughes, Alexandria, for defendant-appellee.
Before CULPEPPER, FORET and STOKER, JJ.
CULPEPPER, Judge.
This is a workmen's compensation case. Plaintiff seeks benefits for total and permanent disability and statutory penalties and attorney's fees. From a judgment dismissing his suit, plaintiff appeals.
The issues are: (1) Was plaintiff disabled beyond February 2, 1979, the date compensation payments were terminated? (2) Is plaintiff entitled to penalties and attorney's fees?

FACTS
It was stipulated at trial that the plaintiff, Mr. Ellis, suffered an accident within the course and scope of his employment as a janitor with the Rapides Parish School Board. Hartford Accident & Indemnity Company, as insurer of the School Board, paid compensation benefits from August 15, 1978, the date of the accident, through February 2, 1979, and paid all medical and travel expenses for that period of time.
The accident occurred while Mr. Ellis was engaged in arc-welding, standing atop a metal extension ladder. He received an electrical shock and fell, catching his right leg in the extension ladder rope. The rope broke the fall somewhat, causing the plaintiff to hang upside down for a short period of time until extricated by fellow workers.
Initial treatment was rendered to the plaintiff at the Rapides General Hospital emergency room. A week later, he went to see a general practitioner, Dr. Grover Bahm, who saw him three times and referred him to Dr. Douglas Gamburg, an orthopedic surgeon. Plaintiff's complaints were of lower back pain, numbness of the right leg, and mild or dull headaches.
The plaintiff was further referred to a neurosurgeon, Dr. Babson Fresh, who saw him on three occasions. The last examination by Dr. Fresh took place on January 19, 1979, at which time Dr. Fresh recommended that plaintiff return to work in a week or two. The defendant Hartford thereafter discontinued Mr. Ellis' compensation benefits effective February 2, 1979.
After his discharge by Dr. Fresh, the plaintiff then saw Dr. Austin Gleason, an orthopedic surgeon in Shreveport. In July, 1979, Dr. Gleason, in consultation with a neurosurgeon, Dr. Don Smith, performed a battery of tests on the plaintiff, including a myelogram and a bone scan, all of which were negative.
Dr. Gleason then referred plaintiff to Dr. Christopher Burda, a rheumatologist. Dr. Burda examined the plaintiff three times, last seeing him on November 28, 1979. From January through December, 1980, the plaintiff was treated for his complaints by Dr. Robert Ourso, Jr., employed by the Rapides Parish Police Jury, to provide medical services for the inmates of the Rapides Parish jail. Plaintiff was incarcerated there and later pled guilty on a charge of second degree murder. Dr. Ourso testified that he saw Mr. Ellis approximately six times during this period and treated him symptomatically, but did not examine him.
The trial court held in written reasons that the lay testimony and limited findings of Dr. Burda were far outweighed by the findings of the other doctors.

*992 DISABILITY
The first issue before us is whether the trial court erred in finding that the plaintiff was not entitled to benefits for disability.
The appellant's basic complaint appears to be that the trial court gave insufficient consideration to the testimony given by Dr. Burda and Dr. Ourso.
Dr. Burda is a rheumatologist, specializing in the treatment of arthritis and related illnesses. The plaintiff was referred to him to rule out the possibility of an arthritic condition in his back. There was no indication of any type of arthritis. All of the clinical examinations performed were negative in result except for a finding of limitation of motion of the lumbar spine. This conclusion was based on the complaint of pain in the straight leg raising test. Dr. Burda stated that his guess would be that Mr. Ellis could return to his previous job in six to twelve months from his last visit on November 28, 1979, and he further stated that he felt the plaintiff had a five to ten per cent partial permanent disability.
Dr. Robert J. Ourso, Jr. is a psychiatrist at Central State Hospital. He treated the plaintiff, however, in his separate capacity as general staff physician for the inmates of the Rapides Parish jail, where plaintiff was incarcerated. Dr. Ourso testified that he saw the plaintiff approximately six times in 1980, and his complaints were always consistent. However, he also testified that he did not really examine the plaintiff, but merely listened to his complaints and treated him symptomatically, prescribing muscle relaxants. He had no direct knowledge of plaintiff's difficulties, if any, in doing the work assigned to him, and his opinion as to plaintiff's disability was based strictly on the plaintiff's subjective complaints.
The lay testimony of plaintiff's wife and two inmates of the Rapides Parish jail was offered to establish that the plaintiff's complaints were consistent with pain and discomfort in his lower back.
On the other hand, also introduced into evidence were the depositions of two orthopedic surgeons, Dr. Douglas L. Gamburg and Dr. Austin W. Gleason, and a neurosurgeon, Dr. C. Babson Fresh, and the report of another neurosurgeon, Dr. Don Smith. None of these doctors was able to find any objective or clinical evidence of any accident-related disability after February 2, 1979. They all concurred in diagnosing the plaintiff's injury as musculoligamentous strain, and were of the opinion the plaintiff had no residual disability which would prevent him from returning to work as a janitor. Drs. Gleason and Smith worked together in consultation to perform a complete workup of tests on the plaintiff, but all results were negative, and there was no objective evidence of any continuing disability. They felt the plaintiff's continued complaints were more likely the results of muscular tension, and, after ruling out a ruptured disc, found that plaintiff could return to gainful employment.
It should be noted that the straight leg raising test, on which Dr. Burda based his opinion, yielded negative results with all of these doctors. Dr. Gleason testified that the plaintiff's straight leg raising was positive when performed with the patient lying down, but negative when he was sitting up. He further testified that the results should be consistent in both positions, and when they are not, it tends to mean the patient may be faking or have a psychological overlay. While Dr. Burda stated that it was his normal practice to perform the test in both positions, his notes did not indicate whether or not he did so. The evidence is clear that Dr. Burda was the only physician to find anything clinically wrong with the plaintiff, and this was based primarily on plaintiff's subjective reactions to the straight leg raising test.
While we recognize that in compensation cases the law is to be liberally construed in favor of the employee, the plaintiff in a compensation suit is required to prove the facts by a preponderance of the evidence and with the same legal certainty as required in any other civil case. Guillory v. New Amsterdam Casualty Company, 244 *993 La. 225, 152 So.2d 1 (1963). The question here is whether the plaintiff has borne that burden of proof. Essentially, he argues that the trial court erred in failing to give sufficient weight to the testimony of Dr. Ourso and Dr. Burda, and to the lay testimony presented by plaintiff at trial.
Some general evidentiary guidelines were stated by the Louisiana Supreme Court in Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975):
"It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge's function to determine the weight which is to be accorded the medical testimony as well as the lay testimony. Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. See Larson, supra, at § 79.53. We conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source."
(Emphasis supplied)
The trial court considered the lay testimony, but he did not think it deserved sufficient weight to overcome the medical testimony that plaintiff was not disabled after February 2, 1979.
With regard to the medical testimony, as a general rule the treating physician's testimony should be given more weight than that of the doctor who examines plaintiff for purposes of diagnosis only. Another general rule is that the testimony of a specialist is entitled to more weight than that of the general practitioner when the subject at issue is in his particular field. Guillory v. INA, 401 So.2d 612 (La.App. 3rd Cir. 1981); Porter v. Augenstein Construction Company, 280 So.2d 861 (La.App. 3rd Cir. 1973).
In light of these rules, it was not unreasonable for the trial court in this case to afford more weight to the testimony of the orthopedists and neurosurgeons attending the plaintiff, since they deal routinely with back injuries, than to the testimony of Dr. Burda, a rheumatologist who examined the plaintiff for purposes of diagnosis only, and a psychiatrist, Dr. Ourso. See also Graziano v. Lallie Kemp Charity Hospital, 400 So.2d 1164 (La.App. 1st Cir. 1981).
Whether a plaintiff's pain is substantial enough to render him disabled is a question of fact to be determined by the trier of fact. Such a determination of fact will not be disturbed on appeal when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for such finding, unless such findings are clearly wrong. Crump v. Hartford Accident & Indemnity Company, 367 So.2d 300 (La. 1979); Kraemer v. Louisiana Power & Light Company, 393 So.2d 346 (La.App. 1st Cir. 1980).
After a careful consideration of all the evidence contained in the record, we conclude that the trial court's finding of no disability is not clearly wrong.

PENALTIES AND ATTORNEY'S FEES
In light of the trial court's conclusion that Mr. Ellis was not disabled subsequent to February 2, 1979, the defendant, Hartford Accident & Indemnity Company, did not arbitrarily and capriciously terminate benefits. The adjuster handling the case testified that benefits were terminated as of this date due to receipt of the report by Dr. Fresh dated January 19, 1979 discharging *994 the plaintiff from further active care and recommending that he return to work in the next one to two weeks. Dr. Fresh's opinion was confirmed in July of 1979 by Drs. Gleason and Smith, who, finding no basis for the plaintiff's complaints, found plaintiff able to return to work. Hartford was justified in terminating benefits as of February 2, 1979 and was not arbitrary in refusing to reinstate payments on the basis of the later reports by Dr. Burda and Dr. Ourso.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.