437 So.2d 910 (1983)
Tennie Almermay MARTIN, Plaintiff-Appellant,
v.
EMERSON ELECTRIC COMPANY, et al., Defendants-Appellees.
No. 15518-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
*911 Tyler & Johnson by D.G. Tyler, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for defendants-appellees.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff appeals a judgment rejecting her demands for worker's compensation benefits, penalties and attorney fees, contending the trial court erred in failing to accord proper weight to the testimony of a treating physician.
Finding no manifest error in the trial judge's determination of fact with reference to the claimed disability, based upon his reasonable evaluation of medical and lay testimony, we affirm.
Mrs. Tennie Martin, the 39 year old claimant, was employed by Beaird-Poulan, a division of Emerson Electric Company, in November 1978, and worked on the chain saw assembly line. Although her tasks were generally performed from a sitting position, they also entailed some bending and lifting of relatively light weight equipment parts.
On August 19, 1980, while in the plant cafeteria during a lunch break, plaintiff bent over to wipe up the floor where she had spilled a soft drink and experienced a "popping" sensation in the low back region, accompanied by the immediate onset of pain in that area. Later that day, because of continued back discomfort, plaintiff visited the company nurse who administered first aid in the form of heat application to the back.
Plaintiff returned to work on August 20 and 21, 1980, but the following day, due to headaches and persistent back pain, was referred by her employer to Dr. Asseff, a general practitioner. This physician, who examined the employee on August 22, 1980, diagnosed her ailment as a mild muscle strain of the neck and lumbar area of the back. He prescribed a muscle relaxant, recommended the application of heat and suggested bed rest. Plaintiff returned to Dr. Asseff on August 26 and September 2, 1980. After the latter examination, thinking that plaintiff might have an orthopedic problem, Dr. Asseff referred her to Dr. Joffrion, an orthopedic surgeon.
Upon his examination of the claimant on September 3, 1980, Dr. Joffrion detected no muscle spasms nor any neurological abnormalities. He concluded that plaintiff had sustained a mild lumbosacral strain but could assign no specific basis for her cervical complaints. Dr. Joffrion saw plaintiff again on September 16, 1980. He opined that her low back injury had healed and attributed her headaches and neck pain to tension and anxiety. He recommended that plaintiff return to her former employment on September 22, 1980.
Plaintiff returned to Dr. Asseff on September 18, 1980, still complaining of headaches. Dr. Asseff then referred her to Dr. Boykin, a neurosurgeon, who examined plaintiff on September 22, 1980. Dr. Boykin's examination revealed no objective findings to support the patient's complaints, which he believed were due primarily to muscle tension unrelated to the on-the-job accident.
Plaintiff's final visit to Dr. Asseff was on October 14, 1980, at which time he released her to return to work on October 20, 1980. Based on this medical report, the employer's worker's compensation insurer [which began paying plaintiff weekly benefits of $148 on August 23, 1980] terminated her weekly benefits on October 19, 1980. Medical expenses incurred by the claimant during this time period were also paid.
After her discharge by Dr. Asseff, plaintiff consulted her family physician, Dr. *912 Henry [who was not called by her to testify] and was referred by him to another orthopedic surgeon, Dr. Brian. At the initial visit to this physician on November 26, 1980, plaintiff complained primarily of cervical pain radiating into her right shoulder and hand. Dr. Brian saw plaintiff again on January 16, February 16 and May 18, 1981. Complaints of pain during these visits usually pertained to her shoulder and elbow. Her neck and back conditions were found to be improving. Dr. Brian could not relate the elbow discomfort to her employment injury. He concluded that her complaints were exacerbated by a tense and nervous personality. On the occasion of his last examination, Dr. Brian referred plaintiff to Dr. Burda, a rheumatology specialist.
Dr. Burda first examined plaintiff on June 10, 1981 and concluded that she had sustained a chronic myoligamentous sprain of the lumbosacral area as a result of the job-related injury of August 19, 1980 based upon the history given to him by the claimant. This specialist continued treating plaintiff conservatively until June 1982 when he determined that she had achieved maximum improvement, with her recovery calculated in the range of 90-95%. However, Dr. Burda did not believe that plaintiff was able to return to her former employment because of her vulnerability to further injuries of this nature.
Plaintiff never returned to work for Beaird-Poulan after August 22, 1980. This suit was filed on August 11, 1981 and trial was had on August 19, 1982.
At the merit-trial plaintiff testified in general that she had experienced low back pain constantly since her on-the-job injury of August 19, 1980, that she was physically unable to return to her former employment, and that she was unable to perform her routine household duties. Her frequent complaints of back pain and manifestations of apparent physical limitations were corroborated by the testimony of her husband and several friends.
In his written reasons for judgment the trial judge stated:
"The Court does not believe that the plaintiff has proven that her headaches, neck-pain, tendinitis or any other condition, save her complaints in the low back, were as a result of the incident in the cafeteria of August 19."
The trial court then explained that Dr. Burda's testimony was of little assistance in deciding the case since plaintiff's low back and neck pain had substantially, if not completely, cleared up quite some time before she first visited Dr. Burda.
The trial judge concluded that "plaintiff could have returned to her job on a full time basis when requested to do so by her employer on October 20, 1980." Consequently, her claim for additional worker's compensation benefits were denied.
The thrust of plaintiff's argument on appeal is that, as plaintiff's treating physician, Dr. Burda's testimony pertaining to her disability should have been accorded greater weight than the medical testimony of examining physicians.
In cases of this nature it is the totality of the evidence, medical and lay, which must be examined by the trial court in making its disability determination. It is the trial judge's function to assess the weight to be accorded medical as well as lay testimony. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975).
With regard to medical testimony, as a general rule the treating physician's testimony should be given more weight than that of a doctor who examines a claimant for diagnostic purposes only. Further, the testimony of a specialist is entitled to greater weight than that of the general practitioner when the subject at issue is the particular field of that specialist. Ellis v. Rapides Parish School Board, 419 So.2d 990 (La.App. 3rd Cir.1982).
Guided by these general rules, we address plaintiff's contention that the trial judge did not accord proper weight to Dr. Burda's testimony. We note, first, that Dr. Burda was only one of several treating physicians in this case. The first was Dr. Asseff who, recognizing his lack of specialized training *913 in orthopedics and neurology, and unable to discover any basis for plaintiff's continuing complaints of neck and back pain, referred her to specialists in the appropriate fields. Second, Dr. Burda did not begin treating plaintiff until some nine months after her job-related accident and at a time when any injury likely connected to that incident had healed.
We further note that Dr. Burda, whose specialty is the treatment of arthritis and related diseases, appeared to focus his attention and treatment upon plaintiff's complaints pertaining to her elbowwhich Dr. Burda could in no way connect with her on-the-job injury.
Our review of the record reveals no manifest error by the trial judge in his finding of fact, based upon a reasonable evaluation of all the testimony, relating to plaintiff's claimed continuing disability. Conversely, the trial court's determination that plaintiff had recovered from her job-related injury and was able to return to her former employment on October 20, 1980 is amply supported by the record evidence.
For these reasons, we affirm the district court judgment, at appellant's cost.
MARVIN, J., concurs in part and dissents in part and assigns written reasons.
MARVIN, Judge, concurring in part and dissenting in part.
I concur in part and respectfully dissent in part.
Ms. Martin's inability to return to work because of low back pain was a factual-medical-legal issue which was resolved against Ms. Martin by the trial court. Under our scope of review and where this finding is reasonably supported by the record as it is here, we accept that determination of the trier of fact. I concur in the majority opinion in this respect.
The majority finds, however, that Ms. Martin's complaints of back pain and apparent physical limitations were corroborated by her husband and friends and notes that the trial judge found that her low back condition was the result of the August 19, 1980, incident or accident. This, too, is well supported by the record.
Ms. Martin saw several doctors at monthly intervals between August 1980 and May 1982. All agreed that Ms. Martin had a lumbosacral or myoligamentous strain, most likely caused by the accident. Dr. Burda, who saw and treated Ms. Martin at monthly intervals between June 10, 1981, and May 19, 1982, said Ms. Martin reached only 90-95 percent of what she was before the accident because of the myoligamentous strain superimposed on her unrelated osteoarthritic condition. No other doctor contradicted this primarily because none of the other doctors had seen her after May 18, 1981. Thus, I consider Ms. Martin to have sustained a 5-10 percent impairment of a physical function notwithstanding that she is not disabled, permanently or partially, under the disability subsections of the statute. LRS 23:1221(1), (2), and (3).
Ms. Martin was in reasonably good health before the accident. Her symptoms of myoligamentous strain appeared immediately upon the occurrence of the accident and continuously persisted and manifested themselves afterwards. Under these circumstances her impairment is presumed to have been caused by the accident under the rule of Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977); Gradney v. Vancouvr Plywood Co., Inc., 299 So.2d 347 (La.1974); and Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).
Believing that we should squarely address the impairment issue and resolve it in Ms. Martin's favor, I dissent because the trial court and the majority opinion fails to consider this issue and to apply the rule of the cases cited above. Was Ms. Martin disabled as a result of the strain? That issue was addressed. Was Ms. Martin's back impaired as a result of the strain? That issue was not addressed. Other doctors contradicted Dr. Burda on the disability issue but did not contradict the existence of the strain nor the impairment. The trial court found that Ms. Martin strained her back in the accident *914 but did not consider Ms. Martin's alternative claim of impairment.
The trial court found Ms. Martin had a myoligamentous strain but was able to return to work. I do not disagree with that finding. I dissent because Ms. Martin suffers a 5-10 percent serious permanent impairment of her back as a result of the strain and has not been allowed the benefits to which the law entitles her. LRS 23:1221(4)(p).