453 So.2d 998 (1984)
Dewayne L. BATEMAN, Plaintiff-Appellant,
v.
POWER RIG RENTAL TOOL COMPANY & Power Rig Drilling Company, Inc., Defendants-Appellees.
No. 83-79.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1984.
*999 Jordan & Spring, Ltd., J. Max Jordan, Jr., Lafayette, for plaintiff-appellant.
Davidson, Meaux, Sonnier, & McElligott, John G. Swift and J.J. Davidson, III, Lafayette, for defendants-appellees.
Before GUIDRY, CUTRER and STOKER, JJ.
CUTRER, Judge.
This appeal in a workmen's compensation suit emanates from a trial court judgment in favor of the defendants/employers, rejecting the claim of plaintiff/employee for compensation benefits. The plaintiff, Dewayne L. Bateman, sought permanent total disability benefits, including penalties and attorney's fees, from his employers, Power Rig Rental Tool Company and Power Rig Drilling Company, Inc. (hereinafter both are referred to as "Power Rig").
The plaintiff appeals, requesting a reversal of the trial court judgment and an award for temporary total disability "for a period of fifty-two (52) weeks post-accident...." Also, the plaintiff reurges herein his request for penalties and attorney's fees under LSA-R.S. 23:1201.2. For the reasons to follow, we affirm.

FACTS
The plaintiff, Bateman, had been employed by Power Rig in Lafayette for approximately ten months when he was injured on June 21, 1982. Bateman was classified as a "slab hand," and his duties entailed cleaning and repairing equipment for rental. The injury occurred while Bateman was testing some valves he had recently repaired. During the testing of one of these valves, Bateman was struck on the left side of his face and eye by a heavy slug of industrial grease emitted from the air-pressurized valve. According to Bateman, he was not rendered unconscious by this incident, but he was dazed for several seconds.
Upon reporting the occurrence to his superiors, Bateman was taken to a local opthamologist, Dr. Barry Bohn, who cleaned and treated the injured eye. Dr. Bohn observed a scratch on the cornea of Bateman's left eye and also a secondary irritation inside the eye, termed "iritis." Bateman was treated by this physician on June 21st with antibiotics, pain medicine (Tylenol No. 3) and dilating drops. Those items were also prescribed by Dr. Bohn for Bateman's continued use. Power Rig began paying Bateman weekly compensation benefits of $183.00 per week. Bateman's medical expenses were also paid.
In the period between June 21st and July 5th, Dr. Bohn examined Bateman five times. During this time Bateman complained of incessant headaches which were *1000 not relieved by the pain medication. For several days after the initial accident, Bateman had not used any of the dilating drops which had been prescribed by Dr. Bohn to alleviate pain. On June 28th, Dr. Bohn's examination revealed that the cornea had healed, that the iritis had disappeared, and that the eye appeared normal; only Bateman's complaints of headaches remained. Bateman concedes that his vision returned to normal following Dr. Bohn's treatments.
Dr. Bohn could not determine any physical reason for Bateman's continued complaints of headaches. Dr. Bohn referred Bateman to a neurologist, Dr. Steven Snatic.
Dr. Snatic examined Bateman on three occasions between July 14th and July 30th, during which time Bateman complained of nearly constant severe headaches. According to the history provided by Bateman, he had no prior history of headaches. A neurological examination was conducted on July 14th, which revealed no abnormalities.
After examining Bateman initially, Dr. Snatic opined that the headaches were caused by "muscular tension in the jaws, neck and scalp." The physician believed this could probably be related to the June 21st incident, but he expected a complete recovery within "a few weeks or a month or so." Physical therapy and pain medication were prescribed by Dr. Snatic. Bateman said that the therapy relaxed him somewhat but that the relief was only temporary.
When Bateman returned for a second visit to Dr. Snatic, his headache complaints remained, and he was given another type of pain medication. Further, an EEG and a CT brain scan were performed, each indicating normal results. More medications and a change in the prescription were ordered by Dr. Snatic following Bateman's continued complaints of headache pain.
Dr. Snatic stated that Bateman's problems appeared to stem from an emotional reaction to his injury and were not related to any organic damage to the body or nervous system. He further noted that Bateman appeared to be abusing his medication, causing Dr. Snatic to suspect the possibility of "severe drug abuse in the future." Dr. Snatic could not say whether Bateman actually did have the headaches of which he complained, and he stated that it was possible that Bateman was "malingering."
It was Dr. Snatic's opinion that Bateman was not disabled for neurological reasons. He suggested psychiatric and psychological examinations and stated that he would defer to the psychiatrist's opinion. Dr. Snatic continued to prescribe medication for Bateman via telephone until August 23, 1982.
Upon receiving Dr. Snatic's suggestion that his problems might be psychological rather than physical, Bateman told Dr. Snatic's office nurse that he would not see a psychiatrist or a psychologist; he remarked that he would get "a lawyer to take care of his problem." The results of Dr. Snatic's examination and his opinion that Bateman should see another physician if he continued to abuse his medication and persisted in refusing psychological evaluations were sent to Bateman's employer, Power Rig. Upon the basis of this report Power Rig ceased the weekly compensation payments of $183.00 to Bateman, who was paid through August 2, 1982.
Power Rig's claim manager, Denny Wilson, testified that all of Bateman's medical bills submitted for payment by Power Rig were paid. Wilson further testified that he received no further communications from Bateman following Power Rig's decision to cease compensation benefits. Evidence presented by the defense at trial reflects that Power Rig did pay all of the plaintiff's medical expenses connected with Drs. Bohn and Snatic, medication, EEG and CT scan, travel and physical therapy.
Contrary to his statements to Dr. Snatic's nurse, Bateman, on August 2, 1982, did visit the psychiatrist recommended by Dr. Snatic, Dr. Robert L. Turner. Following his examination, Dr. Turner opined that Bateman could return to work and that his most likely diagnosis was malingering. Dr. Turner, accepted as an expert in psychiatry by the trial court, testified that Bateman's *1001 problems did not fit into the category of a "post-traumatic stress disorder;" nor did Dr. Turner believe that Bateman had a psychological factor affecting a physical condition.
On August 3, 1982, Bateman was seen by Dr. F.T. Friedberg, a clinical psychologist, who administered a battery of psychological tests to Bateman. Dr. Friedberg noted slurred speech by Bateman, which was indicative to him of an abuse of medication. Dr. Friedberg also observed that the patient was "tangential in his thinking," exhibited anxiety and appeared to be "speeding." During this examination, Bateman verbalized a significant amount of headache pain. Dr. Friedberg diagnosed Bateman as having a "hypochondriacal disorder where we have emotional factors interfering or associated with pain ...."
It was Dr. Friedberg's opinion that Bateman's problems were emotional, not organic, and that he would be a poor candidate for psychological therapy, because of Bateman's poor motivation. However, Dr. Friedberg stated that he could not make a definite diagnosis of plaintiff without a full detailed background on Bateman's history of emotional behavior, which was not made available. Although he stated that he did not believe that Bateman should return to any work situation with his present complaints of headaches, Dr. Friedberg admitted that he could not make a valid diagnosis as to the relationship of Bateman's emotional status to any particular event or period in the plaintiff's history.
A close friend of and former co-worker with Bateman testified that the latter complained frequently of headaches and that his "anxiety is more prominent now than it was then." Another employee at Power Rig, Charles Oge, testified that, prior to his injury, Bateman had experienced various personal problems with a girlfriend with whom he lived. The co-employee had overheard various telephone calls wherein Bateman exhibited strong anger concerning certain acts by his girlfriend. Following one of these calls, Bateman had even threatened physical violence against the girl.
Suit was filed by Bateman on September 23, 1982. An exception of prematurity was filed by the defendants, but the disposition of the exception is not revealed in the record before us. The trial court has favored us with a concise recitation of his reasons for ruling:
"The Court finds the following facts to have been proven:
(1) The Plaintiff has no physical disability which can be attributed to the accident.
(2) As of the time that Defendant stopped compensation, all physical injuries which Plaintiff sustained in the accident had healed.
(3) The Plaintiff is suffering from no emotional or psychological disability. This third finding is based on:
(a) Dr. Robert L. Turner's testimony which impressed the Court;
(b) Plaintiff's testimony was unimpressive;
(c) Since even Plaintiff admits that he has no vision disability and Dr. Snatic & Dr. Bohn both state that there is no physical basis for his headaches, Plaintiff's failure to seek psychological or psychiatric treatment and help speak loudly of their non-existence."

ISSUES
The issues before us are whether the trial judge was clearly wrong in his factual finding that Bateman failed to prove that he was disabledphysically or psychologicallyas a result of his employment injury on June 21, 1982, and whether the defendants were arbitrary, capricious or acted without probable cause in discontinuing their payment of worker's compensation benefits to plaintiff, thus entitling him to penalties and attorney's fees.

DISABILITY
The plaintiff in a workmen's compensation case has three elements of proof which he must establish at trial by a preponderance of the evidence: that he sustained *1002 a personal injury by an accident arising out of the course and scope of his employment; that he was/is disabled; and that his disability was causally related to the injury he received in the job-related accident. Gallien v. Supreme Contractors, Inc., 448 So.2d 871 (La.App.3rd Cir. 1984).
In the instant case Power Rig concedes that Bateman's accident on June 21st occurred during the course and scope of the plaintiff's employment with defendants. There is no question that Bateman's left eye was injured as a result of this accident and that he was paid compensation and medical benefits until August 2, 1982. The question before us is whether the trial court committed manifest error in finding that Bateman was not disabled after this date.
The only evidence as to possible physical disability is found in the previously referred to testimony of Drs. Bohn and Snatic. A brief review of that testimony reveals that no evidence of Bateman's physical disability existed subsequent to the last weekly compensation payment. Each of those medical experts could find no indication of physical or organic impairments. No other medical testimony was introduced to refute these medical opinions. The testimony of these physicians fully supports the trial judge's conclusion that Bateman "has no physical disability which can be attributed to the accident."
The remaining allegation of disability is based upon the plaintiff's emotional or psychological state, allegedly causing disabling headaches. A succinct statement as to the law and jurisprudence surrounding claims of mental disability has recently been stated thusly:

"Mental disabilities are compensable under the Louisiana Workmen's Compensation Law. Victoriana v. Orleans Parish School Board, 346 So.2d 271 (La. App.4th Cir.1977); Murphy v. Employers Mutual Insurance Company of Warsaw, et al., 248 So.2d 623 (La. App.3d Cir.1971); Peavy v. Mansfield Hardwood Lumber Company, 40 So.2d 505 (La.App.2d Cir.1949); Lala v. American Sugar Refining Company, 38 So.2d 415 (La.App.Orl.1949).

"In the early Lala case, the court stated:
`There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute.' At page 421.

"The condition, however, must be proven, as in any other disabling injury, by a preponderance of the evidence and the causal relation must be established. Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App.3d Cir. 1975); Victoriana, supra; Knight v. Southeastern Chemical Corp., 344 So.2d 67 (La.App.4th Cir.1977). In Victoriana, the Fourth Circuit Court aptly noted:

`In such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of the condition, and the possibility of the symptoms being easily feigned; the evidence in these cases should be scrutinized carefully and every precaution taken to guard against unjustified claims.' At page 273."

Faucheux v. Hooker Chemical Corp., 440 So.2d 1377 (LA.App.5th Cir.1983), writ den., 444 So.2d 1238 (La.1984), writ granted, 444 So.2d 1251 (La.1984).
The trial court obviously accepted the testimony of Dr. Turner, a psychiatrist, that the most likely diagnosis for Bateman's headache complaints was that the plaintiff was malingering. The plaintiff's testimony was deemed "unimpressive" by the trial judge.
Counsel for the plaintiff argues that the trial court erred in accepting Dr. Turner as an expert in the field of psychiatry, inasmuch as he had not been "board *1003 certified" by the State of Louisiana. The qualification of a witness as an expert by the trial judge lies within the wide realm of the trial judge's discretion, and that determination will not be disturbed on appeal absent a showing of manifest error. Matter of Aaron, 417 So.2d 105 (La.App.3rd Cir.1982), appeal after remand, 434 So.2d 624, writ den., 438 So.2d 1111 (La.1983). The record reflects that no abuse of discretion occurred when Dr. Turner was qualified as an expert by the trial court.
The primary argument by Bateman is that the trial judge erred in accepting Dr. Turner's diagnosis of malingering over those provided by Drs. Snatic and Friedberg. Dr. Snatic, a neurologist, stated that Bateman's problems appeared to be an emotional reaction to his job-related accident. Dr. Friedberg stated that the plaintiff exhibited a great deal of anxiety during his single examination which was "not contraindicative" of a post-accident syndrome. Dr. Friedberg's diagnosis was hypochondria with emotional factors interfering or associated with pain.
The trial judge, as factfinder, has the function of assessing the weight to be accorded competent medical testimony. Martin v. Emerson Elec. Co., 437 So.2d 910 (La.App.2nd Cir.1983). Further, the testimony of a specialist in a certain field is entitled to greater weight than that provided by other medical experts when the subject at issue concerns the particular field of the specialist's expertise. Ellis v. Rapides Parish School Bd., 419 So.2d 990 (La. App.3rd Cir.1982).
Dr. Snatic admitted that his field of expertise was neurology and that no neurological abnormalities appeared to exist. He referred Bateman to Dr. Turner and expressly stated that he would defer to Dr. Turner's medical findings concerning Bateman's emotional problems. Dr. Turner stated that the most likely diagnosis was malingering.
The diagnosis of hypochondria by Dr. Friedberg was followed by his admission that he could not draw any correlation between this diagnosis and any prior event in Bateman's history without a detailed background sketch of the plaintiff. Apparently, no such sketch was provided by Bateman or otherwise. No other medical testimony was provided at trial.
Under these circumstances, the trial judge committed no error in finding that the plaintiff had failed in his burden of establishing by a preponderance of the evidence that he suffered a disability causally related to the June 21st incident.
Having come to this conclusion it is not necessary that we discuss penalties and attorney's fees.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal shall be paid by plaintiff-appellant.
AFFIRMED.