STOKER, Judge.
Lloyd Perrodin, Jr. claimed worker’s compensation benefits from his employer, Martin Mills, as a result of an accident at work on September 28, 1981. Payments were discontinued in November, 1981 based on the conclusion by three doctors that Perrodin was able to return to work. Per-rodin continued to complain of back pain, and eventually filed this suit against Martin Mills and its compensation insurer for benefits for the balance of his lifetime, medical expenses, costs, attorney’s fees and penalties for the arbitrary and capricious termination of payments. After trial, the judge awarded Perrodin benefits from the time of the last payment, throughout the period of his disability. He also ordered the defendants to pay for Perrodin’s medical expenses, including a myelogram, which one doctor suggested might identify the source of Perrodin’s complaints. However, he refused to award penalties because of the employer’s good faith reliance on the opinions of the doctors in discontinuing benefits. The defendants appeal.
Perrodin worked as a knitter for Martin Mills, which involved climbing up a ladder to change yarn spools in knitting machines. On September 29, 1981, while all the other employees were taking a break, Perrodin claims he fell three to four feet off a ladder, hitting his back on a machine, and landing on his left side. He says he cut his cheek, split his lip, broke his tooth, injured his left elbow, and hurt his back. The other injuries healed within a short period of time, but Perrodin claims that he continues to suffer from back pain that prevents him from returning to work.
The elements of proof that a plaintiff in a worker’s compensation case must establish at trial are: (1) that an accident occurred in the course and scope of employment which caused injury; (2) that the plaintiff was disabled; and (3) that the disability is causally related to the injury sustained in the job-related accident. Kilgore v. Western Cas. & Sur. Co., 462 So.2d 1366 (La.App.3d Cir.1985), writ denied, 466 So.2d 470 (La.1985); Bateman v. Power Rig Rental Tool Co., 453 So.2d 998 (La.App.3d Cir.1984); Gallien v. Supreme Contractors, Inc., 448 So.2d 871 (La.App.3d Cir.1984). The thrust of the defendants’ arguments is that Perrodin failed to prove that he is disabled.
Perrodin was required to show by a preponderance of the evidence that he was disabled by a job-related accident. Kilgore, Bateman, and Gallien, supra. At *974 the time of Perrodin’s injuries, a claimant could be considered disabled if he could work only in substantial pain. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Knight v. Cotton Bros. Baking Co., Inc., 473 So.2d 105 (La.App.3d Cir.1985). Whether or not pain is substantial enough to render a claimant disabled is a question of fact, and the conclusion of the trier of fact will not be disturbed absent manifest error. Anderson v. Meeker Sugar Co-op., Inc., 476 So.2d 1156 (La.App.3d Cir.1985): Knight, supra.
Our review is complicated by the failure of the trial judge to find that Perro-din is disabled. He concluded that Perro-din did fall off a ladder while performing his job. He was convinced by the testimony of the doctors that Perrodin suffered an injury to his back in the accident. The judge then stated that Perrodin was entitled to compensation, including the cost of a myelogram, “which would confirm or deny the plaintiff's status[.]” He cited a passage from Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980), which sets forth a jurisprudential presumption that a claimant’s disability resulted from a job-related accident if he was in good health before the accident and manifested his symptoms af-terwards. However, before the presumption can apply, the plaintiff must prove that he is in fact disabled. The judge apparently left that step out of his analysis. Therefore, we review the record to determine whether Perrodin met his burden of proving his disability.
Perrodin saw five doctors and a chiropractor between his accident and trial. Shortly after the accident, he saw Dr. Fournet. In his three visits to Dr. Fournet, Perrodin complained of pain in his shoulders, face, neck and elbow, but never mentioned his back. A week after the accident, Dr. Fournet told Perrodin that he could return to work. When Perrodin failed to show up for his next appointment, Dr. Fournet assumed he had recovered, and discharged him.
Perrodin was sent to Dr. Smith, Martin Mills’ “company doctor,” when he refused to return to work. Perrodin complained of back pain and walked in a stooped position. Dr. Smith found muscle spasms, but no disc protrusion or nerve root irritation. On October 19, 1981, he told Perrodin not to work, based solely on Perrodin’s subjective complaints of pain. He believed that Per-rodin’s pain should have resolved itself within a month to six weeks, and that he should have been able to return to work. When Perrodin showed no improvement, Dr. Smith referred him to Dr. Webre.
Dr. Webre saw Perrodin three times in November, 1981. Perrodin walked slumped forward and complained of low back pain. Dr. Webre found no muscle spasms or abnormalities. He advised Martin Mills that Perrodin could return to work.
Perrodin went to Dr. Blanda in early 1982. He told the doctor that he had suffered back pain since the accident in September, which had not improved. Dr. Blan-da found that Perrodin had a full range of motion, with no muscle spasm, and his spinal x-rays were normal. Dr. Blanda recommended exercise, and told Perrodin to return to work.
In November, 1982, Perrodin went to Dr. Guidry, a chiropractor. Dr. Guidry diagnosed a protruding disc, and began treating Perrodin with spinal manipulations. The first treatment brought Perrodin a great deal of relief. During his second visit, Dr. Guidry said the disc was no longer protruding, and that the mild residual pain would lessen as the disc healed.
Perrodin was sent to Dr. Anders by his attorney while he was still a patient of Dr. Guidry. Though he reported only mild and intermittent back pain to Dr. Guidry, he told Dr. Anders that he was in great pain. Dr. Anders noted that Perrodin’s exclamations of pain during the first examination were exaggerated. He thought it unusual that Perrodin could not bend over to remove his socks, and his suspicion was *975 raised as to the quality or genuineness of the complaints. Nevertheless, Dr. Anders diagnosed nerve root compression. He stated that the results of a CT scan which showed bulges at L3-4, L4-5 and L5-S11 were “equivocal” and within the normal range. He recommended a myelogram to localize Perrodin’s problem. Perrodin declined to undergo the test.
Only Dr. Anders suggested that Perrodin is disabled. Even this conclusion is based on Perrodin’s subjective complaints of pain, as Dr. Anders apparently found only questionable objective manifestations. The only treatments ever administered were chiropractic manipulations and nonspecific prescription pain relievers.
Although the medical experts could not identify the source of Perrodin’s alleged pain, lay testimony was introduced to show that his pain was real. The Supreme Court, in Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982), reiterated that “medical testimony ‘must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events in order to judicially determine probability’.” [Citations omitted]
Perrodin testified that he enjoyed his job, and that he had a good relationship with his supervisor. His supervisor stated that he had a poor attendance record, had been suspended a month before the accident for being uncooperative, and was warned on September 24, 1981 that he was on the verge of being fired. Four days later the accident occurred.
Perrodin says his back hurts all the time, his legs hurt occasionally, he cannot do household chores, play sports or have sex, and he has difficulty urinating. Perrodin’s girlfriend testified that he sometimes complains of back and leg pain, and cannot engage in many of his former activities. A neighbor stated that for a few months after the accident, Perrodin walked slower and “leaning down,” though he walks normally now.
Perrodin’s testimony about his ailments is highly suspect. He never mentioned to his six doctors that he had sexual or urinary problems. He seems to have no problem riding his car or motorcycle. Perro-din’s job involved climbing and bending, but only light lifting (20 to 30 pounds). He never attempted to return to work.
His girlfriend seems to know very little about him, though Perrodin apparently stays at her house every night. She was not aware of his troubles at work, and she does not know why he does not carry out the trash or mow the grass any more.
The neighbor began his testimony by stating that he was working at Martin Mills at the time of Perrodin’s accident, though a representative of the company testified that he had been fired in January, 1980.
We do not believe that Perrodin has presented convincing evidence that he cannot work. We find no manifest error in the trial judge’s conclusion that there was an accident, and that Perrodin suffered some minor injuries. However, Martin Mills met its obligation by paying benefits up until the time that three doctors could find no reason why Perrodin could not return to work. We hold that Perrodin has not met his burden of proving that he is disabled, and therefore he is not entitled to worker’s compensation benefits. The judgment of the lower court reflects a finding of disability. The judge did not make such a finding in his reasons for judgment, but even if he had, we would have considered it manifest error.
For the reasons given above, we reverse the judgment of the trial court and dismiss plaintiff’s action. The costs of these proceedings, both at the trial court and appellate level, are assessed to plaintiff-appellee, Lloyd Perrodin, Jr.
REVERSED.