502 So.2d 157 (1987)
Richard O. THOMAS, Sr., Plaintiff-Appellant,
v.
BLACK & DECKER (U.S.), INC. and the Home Insurance Company, Defendants-Appellees.
No. 86-117.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1987.
*159 Stockwell, Sievert, Robert S. Dampf, Lake Charles, for intervenor-defendant-appellant.
Jones, Jones and Alexander, Glenn W. Alexander, Cameron, for plaintiff-appellant.
Raggio, Cappel, Richard B. Cappel, Lake Charles, for defendant-appellee.
Before FORET, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff, Richard O. Thomas, suffered an injury to his right hand while using a 3/4" industrial, heavy duty drill manufactured by defendant, Black & Decker, Inc.
Thomas was working as a roustabout for Cameron Construction Company on January 31, 1983. He and his co-workers were building a bulkhead and dock in Cameron, Louisiana. They were preparing 12" by 12" creosote sills to be attached along the bulkhead as bumpers for the boats which would come alongside the dock. Holes had been drilled in the sills for bolts, and plaintiff, using a Black & Decker 3/4" drill and a 3" countersink bit, was boring a countersink hole. Suddenly the drill bit went into a bind and stopped turning in the wooden sill, causing the handle of the drill to swing violently. This made plaintiff's hand spin around and strike a cable attached to the end of the sill, causing his injury.
He sued Black & Decker and its insurer under a theory of products liability alleging that the drill was defective and unreasonably dangerous in normal use, and that this caused his injury. The case was tried before a jury and submitted to it on interrogatories.
As Interrogatory No. 1 on the special verdict sheet the jury was asked: "Was the Black & Decker drill being used by plaintiff on January 31, 1983, unreasonably dangerous?" In response the jury marked the answer "No", and, in obedience to its instructions, answered no further questions. The trial judge signed a judgment based on the verdict dismissing plaintiff's suit.
Thomas appealed alleging six assignments of error. Two of these assignments pertain to rulings regarding the expert witness testimony, and four have to do with the jury instructions. We find no reversible error and we affirm the judgment for the reasons here to follow.
ASSIGNMENTS OF ERROR HAVING TO DO WITH EXPERT WITNESS TESTIMONY

I.
Plaintiff relied on one expert, Ronald E. Walker. The trial court accepted Walker as an expert in safety engineering, but would not accept him as having expertise in *160 design engineering. Walker holds academic degrees in physics and geophysics but he does not hold any engineering degree.
The qualification of an expert witness lies within the wide realm of the trial judge's discretion, and that determination will not be disturbed on appeal except on a showing of manifest error. Bateman v. Power Rig Rental Tool Company, 453 So.2d 998 (La.App. 3rd Cir.1984). We find no error in the trial judge's ruling that this witness lacked sufficient expertise to qualify as an expert in the design engineering of portable power tools. Even if this was error, however, the ruling proved ultimately to be of little or no consequence, because the witness was permitted to thoroughly explain to the jury the tests that he ran on the Black & Decker drill involved in the accident, his perceived dangers in the use of the drill, and his opinions as to what Black & Decker could have done to avoid the accident.
Walker was not permitted to testify in so many words that the drill was defective in design rendering it unreasonably dangerous in normal use, and that Black & Decker could have incorporated a safety device to prevent the accident. Appellant assigns this ruling as error. We do not agree. An examination of the entirety of his testimony shows that the jury was actually permitted to hear everything that Walker had to say.
The safety device recommended by Walker was a torque limiting device which, according to him, would have prevented the drill from ever going into an unmanageable bind. Although not permitted to articulate his conclusions in formalistic product liability language, Walker's opinion came across clearly, the inference being inescapable to even the least attentive juror that Walker thought a torque limiting device should have been installed on the drill by Black & Decker to make it safe, and that the failure to do so made it unsafe and caused the accident. He testified extensively about tests he had conducted to measure the force exerted by the drill when it went into a bind or lock-up mode. He opined that the tested 220 pounds of force exerted by this drill in this mode would exceed the ability of one man to control the handle. He was also allowed to testify in depth about a torque limiting device which he declared was available to Black & Decker and actually used by it in some of its drills. He believed that such a device should have been installed to limit the force to somewhere around 75 pounds making it relatively safe for the operator. He explained this theory to the jury in considerable detail.
There was a short note of evidence taken out of the jury's presence in which plaintiff asked questions and got answers from Walker in the formalistic expressions "unreasonably dangerous in normal use" and "defective in design", and we have compared this note of evidence to the extensive and uninhibited expression of opinion from this witness that the jury actually heard; we are convinced that whatever difference there was between what the jury heard and what it did not hear was too subtle a distinction to be considered seriously. We accordingly find no merit to this assignment of error.

II.
The second assignment of error dealing with the expert witnesses is that it was wrong to permit the defendants' two expert witnesses to testify as to the cause of the accident and to testify that there was no defect in the drill.
Defendants' experts were William Saffell and Andrew H. Payne. Saffell, Black & Decker's manager of safety assurance, whose duties included overseeing the design of new products from the point of view of user safety, was accepted by the court as an expert in power tool design and technology. Payne, appellees' outside expert, was accepted as an expert in the field of failure analysis involving power tools.
Saffell testified that the drill was not defective in design and that the cause of the accident was not attributable to the drill. He said that it "was obviously a *161 freak type of thing." Their other expert, Payne, described the accident as "one of those unfortunate accidents that happens when there is just a momentary lapse." Both experts, commenting on the torque limiting device, stated that torque is of the essence of the capability of the tool, and that if the torque is limited the tool is limited. They explained that the torque is necessary for the tool to do its job.
Appellant complains that these witnesses should not have been allowed to testify as to the absence of a design defect, or as to what caused the accident to happen, arguing the basic unfairness of allowing the defense experts to answer the same questions not allowed to be answered by his own expert. The answer to this is, first, as we have pointed out earlier, the defendants' experts were testifying within the realm of their expertise while, technically, the plaintiff's expert was not; and second, for all practical purposes the plaintiff's expert was accorded the same latitude as were the others. As pointed out previously, the determination of qualifications of an expert is a matter lying within the broad discretion of a trial judge, and we find no manifest error in the court's determinations regarding the qualifications of these experts.
ASSIGNMENTS OF ERROR HAVING TO DO WITH THE CHARGES

III.
In their brief appellees did not favor the court with arguments responding to the next four assignments of error.
The trial court gave a charge to the jury instructing it that the fault of a third person, for whose conduct the manufacturer was not responsible, was a defense which the law allows a manufacturer to raise. While conceding that the charge as given was a correct statement of the law, the appellant argues that it was error to give it because it was inappropriate, it being inappropriate because there was no evidence offered or any contention made by Black & Decker that the accident was caused by the fault of a third person.
During the trial the question was asked of every liability witness raising the suggestion that a pipe handle was on this drill different from the one that came with it from the factory. These questions lead nowhere. The only response that might be considered favorable to defendants was the observation by one of their experts that the pipe handle looked perhaps two inches shorter than the handle that came with it out of the factory, but he also indicated even if that was the case the shorter handle probably had nothing to do with the accident. Nowhere in their pleadings, including the third party demand against Cameron Construction Company, Inc. did the defendants mention modification of the drill by a third party as a defense.
After the trial of the case and the presentation of all the evidence and arguments, the court is required to instruct the juror on the law applicable to the cause submitted to them. La.C.C.P. art. 1792. If there is no factual basis for a charge, then the giving of that charge may be error if it could have influenced the jury's verdict to the prejudice of a party. Dowling v. Mutual Life Insurance Company of New York, 168 So.2d 107 (La.App. 4th Cir.1964), writ denied 247 La. 248, 170 So.2d 508 (1965).
Here, there is substance to the argument that there was simply not enough evidence presented by either side that could have formed a factual basis for a charge of third party fault, and that the charge was therefore inappropriate. However, we do not rest our decision finding no error in the giving of this charge on that premise, because we find, in any event, no prejudice has been shown. This is so because the jury never reached the interrogatory concerning causation, which was the second question on the verdict sheet, but decided the case on the first interrogatory having to do with whether the drill was unreasonably dangerous. In their proposed verdict sheets both sides asked the court to put the subject of unreasonable *162 danger to the jury as the number one interrogatory, and the court did. In its instructions the trial court first instructed the jury as to the liability of a manufacturer of a product, and next as to causation, and it was in the causation instruction that the fault of a third person defense was discussed. The jury was specifically told that whether the product was defective and whether the defect was a legal cause of the injury were entirely separate questions. Accordingly, although this instruction may have been improper, it could not have influenced the verdict, and we find no error in the giving of it.

IV.
The trial court ruled that the principle of comparative fault would not be applied in this case, because the factual basis of this case was indistinguishable from that of Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985), a case involving an industrial accident resulting in an injury to an employee's hand due to defective machinery and the employee's ordinary contributory negligence.
Appellant contends that it was error for the trial court not to include the following instruction taken from Bell v. Jet Wheel Blast, supra:
"The imposition of a duty on the manufacturer to make the machine safe to operate means that the law does not accept the employee's ability to take care of himself as an adequate safeguard of interests which society seeks to protect."
This language was actually a quotation taken from a New Jersey case, but the cited case from which the quotation was taken, introduced by the Bell v. Jet Wheel Blast court by the signal "Cf.", was sufficiently analogous to the conclusion being reached in the Bell case (i.e., that comparative fault could not be applied to reduce Bell's claim for damages) to lend support to that conclusion. Therefore, the requested charge might have been a proper one had the issue of plaintiff's fault been presented to the jury. The issue of plaintiff's fault was not presented to the jury, however, because the trial judge ruled that as a matter of law comparative fault was not applicable in the case. Therefore, the above requested charge was not applicable, and the trial court did not err in refusing to give it.

V.
It is also alleged to have been error for the trial court to refuse to give this instruction:
"A designer-manufacturer has a continuing duty to provide safety devices as they become available."
This requested charge was based on language from Lanclos v. Rockwell International Corporation, 470 So.2d 924 (La. App. 3rd Cir.1985). Appellant argues that there was available technology at the time of this accident to provide a torque limiting device for this drill, and that such a device would have prevented the accident. Appellant further argues that the duty defined by this requested charge is an additional duty imposed upon a manufacturer.
The trial court did not give the requested charge but gave the following instead:
"If the hazards presented within the range of the equipment's foreseeable uses are unreasonable, this imposes an additional duty on the designer-manufacturer to provide adequate guards against those hazards."
The charge given substantially covers the requested instruction, although we agree with appellant to the extent that the charge would have been a more complete statement of the law had it added the language "as they become available" before the period ending the sentence. Nevertheless, the subject of this charge is academic, considering that the jury found the threshold element "unreasonably dangerous" not present. There is no duty to provide safety devices for a tool that is not unreasonably dangerous in normal use.

VI.
Appellant finally complains of the failure to include in the instruction the following *163 requested charge from Perkins v. Emerson Electric Company, 482 F.Supp. 1347 (W.D.La.1980):
"The responsibility of a manufacturer of a product is to do everything it can to engineer hazard out of its product and if it can not, it must warn users of the hazards."
For the same reasons given earlier in this opinion, we find that the failure to give this instruction was not error. The duty to warn arises only if there is something to warn about, i.e., an unreasonable danger in normal use, or a defect. The jury found no defect in this case.
Furthermore, the trial judge, helpfully explaining his reasons for denying this requested charge, said:
"... All charges as to warning were deleted for the reason that the plaintiff himself voiced full knowledge of the dangers of this instrument, and under the prevailing law a warning is not necessary when a plaintiff is fully aware of the hazards involved."
The trial judge was correct in this observation. See Winterrowd v. Travelers Indemnity Company, 462 So.2d 639 (La.1985).
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant will pay all costs of this appeal.
AFFIRMED.