520 So.2d 860 (1987)
Ethel CLARK, et al., Plaintiffs-Appellants,
v.
STATE FARM INSURANCE COMPANY, et al., Defendants-Appellees.
No. 86-1050.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*861 Kelly & Salim, Robert L. Salim, Natchitoches, for plaintiffs-appellants.
Watson, Murchison, Crews, Arthur & Corkern, Steven D. Crews, Natchitoches, for defendants-appellees.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KING, Judge.
The only issues presented by this appeal are whether or not the trial court erred in determining the weight to be accorded competent medical testimony and in the amount of damages awarded to plaintiff.
Ethel Clark, individually, and as natural tutrix of her two minor children (hereinafter plaintiff), appeals the trial court judgment in her favor. Plaintiff and her two minor children were injured in an automobile accident and filed suit against the driver of the car that struck her and his insurer, State Farm Insurance Company (hereinafter defendants). At the trial on the merits, the defendants stipulated liability and the trial was limited to the issue of damages. After a trial on the merits, the trial judge granted judgment in favor of the plaintiff and her two children and against defendants in the total amount of $11,565.54. Plaintiff timely appeals. We affirm.

FACTS
On April 2, 1984, plaintiff, Ethel Clark, and her two children were enroute to the Natchitoches Parish Hospital to obtain treatment for injuries a daughter had sustained in a fall at home. On the way to the hospital, plaintiff was involved in a collision with a vehicle owned and operated by the defendant, Dr. Tommy Johnson. After the accident plaintiff and her two children went to the hospital where the emergency room attending physician, Dr. Cook, examined plaintiff and her two children. Dr. Cook found that plaintiff was complaining of a headache, and some neck pain and that she had a mild concussion and acute cervical sprain and acute neck sprain. The X-rays *862 of plaintiff revealed no bone damage, but simply a loss of normal curvature consistent with her muscle spasms. Dr. Cook supplied plaintiff with a soft cervical collar and a prescription for pain and a muscle relaxant. Plaintiff returned three days later, on April 5th, and again on April 9th, for check ups at which time Dr. Cook informed plaintiff she was getting better and not to worry.
Plaintiff's daughter, Stargennia, was also treated on April 2, 1984 for a small laceration on the side of her face; she returned on April 9th to have a single suture removed. Plaintiff's son, Demetric, was diagnosed on April 2, 1984 as having a mildly contused right temple and a mildly sprained neck. Other than the initial visits on April 2nd, plaintiff's return visits on the 5th and 9th, and Stargennia's return on the 9th to have her sutures removed, there were no other visits to Dr. Cook by plaintiff or the children.
Shortly after terminating her visits to Dr. Cook, plaintiff began to see another physician, Dr. Thomas, apparently at the advice of her attorney. Plaintiff visited Dr. Thomas on April 13, 1984 complaining of the same ailments that she had presented to Dr. Cook. She continued to visit Dr. Thomas until she was released by him on June 7th.
On June 26, 1984, Dr. Thomas notified plaintiff's attorney by letter that plaintiff had "maximally improved," and was being released from his care on July 7, 1984. Later in July, plaintiff again returned to Dr. Thomas with similar complaints. She continued to see him regularly until she was released again on September 27, 1984. On February 21, 1985, plaintiff sought the advice of a third physician, Dr. Bundrick, who examined plaintiff on that date and found nothing wrong with her.
After both children were released from Dr. Cook's care, they began to see Dr. Wise, a local pediatrician. Both the daughter and the son saw Dr. Wise on April 9, 1984 at which time plaintiff stated that the children were having headaches. On May 9, 1984, a month later, the children returned to Dr. Wise. The daughter had fallen again after the last visit and was in for treatment for this recent fall. The son, Demetric, also returned to Dr. Wise on May 9, 1984 allegedly complaining of headaches again. On both occasions Dr. Wise could find no medical or neurological impairment to substantiate either child's complaints.
On August 24, 1984 plaintiff filed suit individually and on behalf of her minor children for injuries allegedly sustained in the April 2, 1984 collision. After stipulations as to defendant's liability, trial was held on March 17, 1986. The trial court awarded general damages to the plaintiff in the amount of $2,500.00 and $750.00 to each of her minor children. The judgment also awarded all of the medical bills, except for three that pertained to Stargennia's injuries unrelated to the accident of April 2, 1984.
Plaintiff appeals assigning as specifications of error that:
(1) The trial court erred in limiting the general damages awarded to plaintiff;
(2) The trial court erred in placing no weight on the testimony of Dr. Joseph A. Thomas in arriving at its award of general damages to plaintiff;
(3) The trial court erred in limiting the general damages awarded to plaintiff on behalf of her two minor children; and
(4) The trial court erred in failing to find that the medical expenses incurred by plaintiff, on behalf of her minor child, Stargennia, with the Wise Clinic for Children, Dr. Charles E. Cook and one-half of the Natchitoches Parish Hospital bill resulted from the accident of April 2, 1984.

DAMAGES
Plaintiff claims that the trial court erred when it awarded general damages of $2,500.00 to her, $750.00 to each of her minor children, and in denying the three medical bills that pertained to Stargennia's alleged injuries.
It is well established that much discretion must be left to the trial court in assessment of general damages. Reck v. Stevens, 373 So.2d 498 (La.1979); Gaspard *863 v. Lemaire, 245 La. 239, 158 So.2d 149 (1963).
The standard of review on the issue of quantum was set forth by the Louisiana Supreme Court as follows:
"We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." Coco v. Winston Industries, Inc., 341 So.2d 332, at pages 335 and 336 (La.1977).
The trial judge stated in his reasons for judgment that:
"The testimony of the investigating officer and the medical experts convinces the court that this accident and the resulting injuries were very minor."
This finding of fact is amply supported by the evidence adduced at trial. Plaintiff saw Dr. Cook, the initial physician, on three occasions, April 2nd, 5th, and 9th, 1984. On April 9th, Dr. Cook indicated that plaintiff could return to work the following week. Plaintiff waited over a week and then went on April 13, 1984, to see the second physician, Dr. Thomas. This apparently was at the advice of her attorney. There was some discrepancy as to who actually called Dr. Thomas. At one point in the testimony, plaintiff stated, "And he [her attorney] went ahead and called for me." She then later stated "... I had called Dr. Thomas myself." She was released from Dr. Thomas' care on June 7, 1984 and on June 26, 1984 he notified plaintiff's attorney of this fact. On July 2, 1984, just a few days of the receipt of this letter by plaintiff's attorney, plaintiff again returned to Dr. Thomas with new complaints. Dr. Thomas again treated and then released plaintiff on September 27, 1984. An unemployment eligibility form admitted into evidence during trial, signed by plaintiff and dated October 4, 1984, stated: "Describe any disability, illness, injury, or pregnancy that may limit work you can accept." Plaintiff answered this question: "None." Plaintiff then sought medical treatment from Dr. Bundrick, an orthopedic surgeon in Shreveport, Louisiana, on February 21, 1985. Dr. Bundrick could find nothing at that time to substantiate plaintiff's complaints of pain.
The minor daughter, Stargennia, was treated in the emergency room for a cut on the left side of her face. There was much dispute as to whether she suffered this injury as a result of her fall at home or in the automobile collision. Mrs. Clark stated at trial that there was a scratch after her fall; however, on cross examination she agreed that she had referred to it as a cut in her deposition.
The minor son, Demetric, had minor injuries which Dr. Cook treated on the day of the accident.
The children's visits to Dr. Wise, their pediatrician, also proved to be fruitless as she could find no medical or neurological impairment to substantiate either child's complaints of headaches.
It is apparent that the trial judge did consider all of the testimony and medical depositions in making his award for damages. The trial judge apparently felt plaintiff was injured but that the injuries were more or less healed within a month after the accident. The record also reflects that in the trial judge's opinion the injuries suffered by Stargennia originated at home in her initial fall and that the claims of headaches by both children were unsupported by the evidence.
The trial court's factual determinations will not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). The record does not contain any evidence which would persuade this court that the *864 trial court's findings of fact and award of damages is manifestly in error or clearly wrong. We feel the awards to plaintiff and each of her children are adequate. The record further reflects that the trial judge's decision, not to award certain medical bills plaintiff incurred on behalf of Stargennia, was supported by the evidence. The trial court was within its discretion when it granted one-half of the hospital expenses for Stargennia, when in fact her cut had manifested itself before the collision.

MEDICAL TESTIMONY
The thrust of plaintiff's argument on appeal is that the testimony of Dr. Thomas, as plaintiff's treating physician, pertaining to her length of disability should have been accorded greater weight than the medical testimony of the emergency room attending physician.
"Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability.... However, in all cases it is the judge's function to determine the weight which is to be accorded the medical testimony as well as the lay testimony." Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743, at page 748 (La.1975).
As a general rule, the treating physician's testimony should be given more weight than that of a doctor who examines a claimant for diagnostic purposes only, and the testimony of a specialist is entitled to greater weight than that of the general practitioner when the subject at issue involves the particular field of the specialist. Martin v. Emerson Elec. Co., 437 So.2d 910 (La.App. 2 Cir.1983); Ellis v. Rapides Parish School Board, 419 So.2d 990 (La. App. 3 Cir.1982).
Dr. Cook stated his diagnosis was that plaintiff would recover within a month. This opinion is supported by the findings of Dr. Bundrick, who is a specialist in the field of orthopedic surgery. The testimony of Dr. Thomas was obviously weighed and taken into account by the trial judge as Dr. Thomas' bills were included in the judgment. In reviewing the evidence, we do not find that the trial court was manifestly in error or clearly wrong in deciding which physicians' testimony should be given more weight.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.