417 So.2d 105 (1982)
In the Matter of the Interdiction of John M. AARON.
No. 8813.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*106 Gahagan & Gahagan, Russell E. Gahagan, Natchitoches, for plaintiff-appellant.
Harrington & Harrington, Eric E. Harrington, Natchitoches, for defendant-appellee.
Before CULPEPPER, SWIFT and LABORDE, JJ.
SWIFT, Judge.
On May 17, 1971, a judgment of interdiction was rendered against John M. Aaron. His wife, Ellen Rae Aaron, was appointed as curatrix. On June 1, 1981, Mr. Aaron filed this proceeding against the curatrix to revoke the interdiction, alleging that he had recovered completely from his former mental illness and was presently competent to take care of his person and administer his estate.
A hearing was held on August 27, 1981. Petitioner's counsel called Mrs. Aaron on cross-examination and presented the testimony of the plaintiff and five lay witnesses. Counsel also offered five certificates from physicians to which the defendant objected to as being hearsay. After the objection was sustained the certificates were proffered. In addition petitioner offered in evidence the deposition of Dr. Charles E. Cook, a general practitioner and coroner for Natchitoches Parish, whose testimony as to the plaintiff's mental competency was objected to and sustained on the ground that he was not an expert in the fields of psychology and/or psychiatry.
After the presentation of petitioner's case in chief the defendant moved for a dismissal of the action under LSA-C.C.P. Art. 1810(B).[1] The judge granted the motion, finding that the plaintiff had failed to present competent medical evidence to show Mr. Aaron is now capable of caring for his person or estate and that the lay testimony weighed to the contrary.
The principal issues presented by this appeal are whether the trial court erred in granting the dismissal and in failing to admit in evidence the five medical certificates and Dr. Cook's deposition.
In a proceeding to set aside an interdiction the burden of proof is on the petitioner to establish that the interdiction should be terminated. Fuqua v. Fuqua, 311 So.2d 568 (La.App. 3 Cir. 1975).
*107 Under Article 1810(B) the judge in a non-jury case, upon a motion for a judgment of dismissal being filed, should weigh and evaluate all the evidence presented at that point and grant a dismissal if the petitioner has not established his case by a preponderance of the evidence. Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La.App. 4 Cir. 1980); Standard Mach., etc. v. So. Pac. Transp. Co., 410 So.2d 842 (La.App. 3 Cir. 1982), writ denied, 414 So.2d 377 (La.1982).
Before discussing whether the evidence supported the conclusion reached by the trial court, we will consider the two evidentiary rulings complained of by the plaintiff on this appeal; i.e., excluding the five doctors' certificates and Dr. Cook's testimony as to plaintiff's mental competency.
In Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App. 4 Cir. 1975), counsel for the plaintiff attempted to offer the deposition of a doctor, accompanied by a certificate of the doctor's physician stating that the witness was unable to testify because of sickness. Defendant objected to the offer, but the trial judge overruled the objection. The appellate court held that the trial court had erred in this ruling stating, "[T]he medical certificate offered in support of the introduction of the deposition was clearly hearsay evidence and should have been excluded."
In the present case we find that the trial court properly determined that the five certificates were hearsay and excluded them from evidence.
In regard to the exclusion of Dr. Cook's opinions as to the plaintiff's mental condition, we recognize that the qualification of an expert witness rests within the sound discretion of the trial court and his determination will not be disturbed except for a showing of manifest error. Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La. App. 4 Cir. 1979); and Maddox v. Percy, 351 So.2d 1249 (La.App. 1 Cir. 1977), writ denied 353 So.2d 1336 (La.1978).
In the present case the evidence reveals that Dr. Cook graduated from the University of Arkansas, School of Medicine, in May, 1952, and is a licensed practicing physician and surgeon in the City and Parish of Natchitoches. He is the coroner for that parish and has served as such for the past 18 years. Dr. Cook was the coroner who examined and certified that Mr. Aaron needed to be committed in 1971. The doctor testified that he has been involved both in his practice and position of coroner with many persons who were mentally disturbed or emotionally upset. He felt capable of reaching opinions as to their mental condition because of his experience, reading about the subject and his contacts with psychiatrists. He has done this for 18 years.
At the taking of Dr. Cook's deposition defendant's counsel accepted the physician's expertise as a general practitioner of medicine, but objected to any statements he might make in the areas of psychology or psychiatry. This objection was reiterated at the trial and it was sustained. However, the deposition was otherwise admitted in evidence. The objection should have been overruled.
LSA-C.C. Art. 393 provides:
"Proof of mental incapacity. The acts of imbecility, insanity or madness must be proved to the satisfaction of the judge, that he may be enabled to pronounce the interdiction, and this proof may be established as well by written as by parol evidence; and the judge may, moreover, interrogate, or cause to be interrogated by any other person commissioned by him for that purpose, the person whose interdiction is petitioned for, or cause such person to be examined by physicians or other skillful persons, in order to obtain their report, upon oath, on the real situation of him who is stated to be of unsound mind." [Emphasis added.]
This article does not limit such testimony to psychiatrists. "[P]hysicians or other skilled persons" may also testify in an interdiction proceeding.
Generally, the fact that a medical doctor is not a specialist in a particular field applies only to the effect or the weight to *108 be given such testimony, not to its admissibility. McCastle v. Woods, 180 So.2d 421 (La.App. 1 Cir. 1965); Frye v. Joe Gold Pipe & Supply Co., 50 So.2d 38 (La.App. 2 Cir. 1951).
In this case we find that the trial court abused its discretion in sustaining the objection to Dr. Cook's opinion as to petitioner's mental condition. That the physician is not a psychiatrist does not establish his lack of qualification on the subject, but it is to be considered in determining the weight to be given to his testimony.
This brings us to the question of whether the plaintiff has established by a preponderance of the evidence submitted in his case in chief (including the excluded testimony of Dr. Cook) that the interdiction should be removed.
At the hearing the petitioner's wife testified that her husband still has to take medication for his illness and visit the mental health center. He is supposed to take lithium and Mellaril each day, but he does not always do so. When he does not take the medication his behavior worsens. At times he will rave and rant. Mr. Aaron is very seldom on an even keel. When he is on a "low" he becomes depressed and sleeps most of the time. When he is on a "high" he talks to persons who are not there and answers the phone when it has not rung. Petitioner is awake almost every night and walks around the house. A typical daily schedule is for him to fix his breakfast after midnight, leave around 4:00 a. m. and not come back until the afternoon. He does not bathe regularly. He has burned three mattresses while smoking in bed and sometimes his waste paper basket catches on fire. He has trouble handling money which generally has been limited to his social security check of $167.00 per month. He has not drunk alcohol for about five years.
The petitioner, who is 61 years old, disputed Mrs. Aaron's testimony in many respects. He insisted that he took four lithium tablets and one Mellaril tablet daily. However, on the advice of a nurse at the mental health center he stopped taking his medication one weekend in January, 1981. He thought he got along all right, but admitted that he felt bad and must have acted differently. He is not taking medication for his diabetes and high blood pressure, because tests have shown this is no longer necessary. He visits the mental health clinic once every four weeks to see a Dr. Boswell. He has not had a drink (one source of his original problem) for over ten years. Mr. Aaron believes that he will be able to take care of his personal needs and business if the interdiction is removed.
Three witnesses, who knew petitioner for over 45 years, testified that he is the same now as he was before he had his problems which caused his commitment to Central Louisiana State Hospital. Two of them expressed the opinion that he can now handle his own affairs.
Julius Aaron, Jr., the petitioner's 80 year old brother, testified that he has seen his brother almost daily for about five or six hours a day. He is the same now as before he had the problem for which he was sent to the state mental hospital and is able to take care of his own business.
Hannah Hankins, petitioner's sister, stated that he visited her practically every day and frequently has lunch at her house. She cannot see any difference between his condition today and before he became ill. She sees no reason why he cannot take care of his personal and business affairs. She said that plaintiff became upset in January, 1981, when his son threatened to take him back to the state mental hospital because he had seen his lawyer about a proceeding to set aside the interdiction.
The deposition of Dr. Charles Cook revealed that the petitioner visited him in June, 1981, for fifteen minutes and visited on August 20, 1981, for thirty minutes. The doctor had examined Mr. Aaron in 1971 and recommended that he be sent to Central Louisiana State Hospital. His diagnosis was a manic depressive schizophrenic, with the illness having been aggravated by alcohol abuse. The doctor was told the plaintiff had not had a drink in 12 years. The petitioner's condition is currently in a state of remission and is controlled by the medication. However, Dr. Cook admitted that "most true manic depressives, when *109 off the medication for as long as a week, will show some manifestations of their primary illness ... whether it be the manic phase or the depressive phase." The doctor believed that Mr. Aaron was taking his medication as he tried to provoke him, but Aaron did not respond with anger. However, Dr. Cook said it is possible that Mr. Aaron may have been able to control his emotions during the interviews even if he had been off the medication. Dr. Cook's opinion was that petitioner can handle his affairs.
While we are reluctant to disagree with the trial judge in these matters, we are convinced from our review of the record, including Dr. Cook's opinions, that the preponderance of the evidence submitted thus far is to the effect that the interdict is capable of caring for his person and estate and there is no actual necessity for his interdiction. Therefore the trial court erred in sustaining the defendant's motion to dismiss.
For these reasons, the judgment of the district court is reversed and this case is remanded to that court for further proceedings in accordance with law. Taxation of court costs will await final judgment.
REVERSED AND REMANDED.
NOTES
[1] LSA-C.C.P. Art. 1810(B) provides:

B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.