LABORDE, Judge.
A judgment of interdiction was rendered against John M. Aaron on May 17, 1971. On June 1, 1981, John M. Aaron filed this proceeding to have his interdiction revoked. Named as defendant in John’s petition is Ellen Rae Aaron, John’s wife and curatrix.
This matter initially came to trial on August 27, 1981. After the presentation of John’s case in chief, Ellen moved for, and was granted, a dismissal of the action pursuant to LSA-C.C.P. Art. 1810(B). John appealed this ruling and this court reversed the trial court and remanded the case back to the trial court for further proceedings. Matter of Aaron, 417 So.2d 105 (La.App. 3rd Cir.1982).
After completion of the trial, the trial court found that John had failed to prove that his interdiction should be revoked. Therefore, judgment was rendered in favor of defendant and John’s petition to revoke his interdiction was dismissed. John appeals. We affirm.
The issue presented on appeal is whether the trial court manifestly erred in denying the relief sought by petitioner. In an excellent opinion, the trial judge gave his reasons for judgment as follows:
“The evidence in this matter indicates that Mr. Aaron has a long history of and still suffers from severe manic-depression which manifests itself in periods of extreme depression followed by periods of elation, high spirits and a feeling of general well being. In addition to the manic depressive illness, Mr. Aaron is afflicted with organic brain syndrome, diabetes, obesity and hypertension.
The psychiatrist, Dr. Linda Boswell, was the only witness to testify that Mr. Aaron was capable of caring for his person and his property and her opinion was based on a very limited number of visits with Mr. Aaron, all of which were made necessary because Mr. Aaron was, in fact, mentally ill. In addition, the credibility of her testimony is lessened by the fact that on *625 some of the occasions when she saw Mr. Aaron professionally he was actually in a very depressed state and subsequently was judicially committed for his own safety and well-being. Further, Dr. Boswell’s opinion was rooted in the assumption that Mr. Aaron would continue to take his medication as prescribed. The testimony of Dr. Eleanor Worsley who has treated Mr. Aaron for many years as well as the testimony of members of his family, who know him best of all, clearly shows that the assumption relied upon by Dr. Boswell is not a reliable assumption. The testimony of Dr. Worsley, as well as Mr. Aaron’s family members, indicates that he cannot be counted on to take his medication and further reveals that he has only had a good history of taking his medication when he is in a controlled environment such as a nursing home. The record of this case indicates that Mr. Aaron functions on a relatively even keel so long as he is kept in a structured environment and has his medication administered to him. The evidence further reflects that when the burden of taking medication is placed in his hands he does not take his medication on a regular basis, and that when he discontinues taking his medication, the absence of those mood controlling drugs causes him to go into a state of severe depression or into a state of extreme elation. Either of these conditions effectively prevents him from caring for his person or his property.
The evidence in this matter shows that Mr. Aaron owns a farm which has been operated by his wife and curator, Ellen Rae Aaron, since the inception of his interdiction. During those years, Mr. Aaron has done nothing to assist his wife in the operation of the farm or the household for the obvious reason that he has been unable to do so because of his mental and physical condition. More specifically, Mrs. Aaron testified that on one occasion, in an effort to give Mr. Aaron some responsibility, she called upon him to supervise the harvesting of the pecan crop. The uncontradicted evidence showed that Mr. Aaron had no idea how many people, nor what people, were involved in this harvest nor did he know how many pounds of pecans they harvested. He simply opened the gate to the pecan orchard so that anyone and everyone could go in and left instructions with these strangers that when they finished picking up pecans they were to come to his house at which time he would weigh the pecans and pay them. There was no way for him to be sure who came and went from the pecan orchard, nor how many pounds they gathered, and as a result virtually no funds were collected for that portion of the pecan crop which he was put in charge of harvesting. The court fears that to remove Mr. Aaron’s interdiction would make him easy prey for anyone seeking to take advantage of his mentally unstable condition.
The court is of the opinion from all the evidence presented that Mr. Aaron continues at this time to be incapable of caring for either his person or his property and that his occasional lucid intervals are solely as a result of the curator providing for him a structured environment in which medication is administered to him on a regular basis. The court has no doubt, based on the evidence of his past performances, that if the interdiction were revoked Mr. Aaron would remove himself from the structured environment (as he testified was his wish) and would shortly lose the small semblance of rationality which he now possesses.”
We note that John, as petitioner, bears the burden of proving that his interdiction should be terminated. Fuqua v. Fuqua, 311 So.2d 568 (La.App. 3rd Cir.1975). After reviewing the record, we conclude, as did the trial court, that John has failed to prove that his interdiction should be set aside.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are to be assessed to petitioner-appellant, John M. Aaron.
AFFIRMED.