LOTTINGER, Judge.
These two suits were consolidated because they involve similar claims made by two different plaintiffs arising from the same set of facts.
In No. CA 85 0131 Carol Wells Boyd, as provisional tutrix of Jeremy Landis Boyd, minor, filed a survival and a wrongful death action against the State of Louisiana, Deputy Sheriffs Kermit Smith, Michel Fourrier, Jay Thompson, Sheriff J. A1 Amiss and Michael D. Day arising from the death of Larry Mitchell Boyd, Jeremy’s father. Sheriff Elmer Litchfield was substituted as a party for J. Al. Amiss, deceased.
*1336 In No. CA 85 0132 suit was brought by Rhonda Boyd, as provisional tutrix of Lori Michelle Boyd, a minor, against Deputy Sheriff Michel Fourrier for the wrongful death of Larry Mitchell Boyd, Lori’s father.
The State of Louisiana was dismissed as a party defendant. Michael D. Day was not served, and the trial court severed the claim against him.
The facts adduced show that on February 6, 1980, Deputy Kermit W. Smith, Jr., presented an application for a search warrant to the Honorable Leo P. Higgin-botham, Jr., Judge, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, seeking a search warrant of the premises at 2960 Osceola Street, Baton Rouge, Louisiana. Judge Higginbotham found probable cause for the search warrant on February 6, 1980, at 5:55 p.m. Probable cause was based on the following facts presented by affiant:
Affiant informs the court that affiant was contacted on February 6, 1980, by a proven confidential and reliable informant who has been working under the supervision of affiant for at least the past four months and who has further provided affiant with information that led directly to the arrest of at least six persons in the Parish of East Baton Rouge and the seizure of a large quantity of drugs which were proven to be controlled by Louisiana State Police Crime Lab.
Affiant further informs the Court that on or about February 6, 1980 he being said informant had occasion to accompany a second individual to the residence of Michael Day, which is known to affaint (sic) from the affiants (sic) individual knowledge and past experiences as 2960 Osceola Street, Baton Rouge, Louisiana; the second individual was unaware that said informant was cooperating with affi-ant. Said informant further advised that this second individual exited the vehicle was observed by said informant to enter the residence on Osceola Street described by second individual as being the residence of Michael Day, which affiant has previously established as being 2960 Osceola Street, Baton Rouge, Louisiana. Said informant knew that second individuals (sic) prupose (sic) of entering Michael Day’s residence was to pruchase (sic) methamphethamine. The second individual exited Michael Day’s residence a short time later and showed to informant a quantity of white powder which the second individual described as crystal met just pruchased (sic) from Michael Day.
Affiant further informs the Court that Sgt. Jay Thompson has received recent information that Michael Day, 2960 Osceola Street, Baton Rouge, Louisiana has been trafficting (sic) in narcotics.
Affiant further informs the court that a check with Gulf States Utilities shows service at 2960 Osceola Street, Baton Rouge, Louisiana in the name of Margaret Day.
Affiant further informs the Court that a check of records in the East Baton Rouge Parish Sheriff’s Narcotics Office, shows Michael Day was arrested on 10/11/77 for possession with intent to distribute marijuana by the East Baton Rouge Parish Sheriff’s Office and on 3/23/77 for possession with intent to distribute marijuana and on 1/10/80 East Baton Rouge Parish Sheriff’s Office executed a search warrant at 2960 Osceola Street, Baton Rouge, Louisiana and arrested Michael Day for possession with intent to distribute methamphetamine seizing approximately one half ounce of suspected methamphetamine.
Less than one hour after receiving the search warrant, Deputy Smith met Deputies Fourrier, Thompson, Adams, Monticello and Wright to execute the warrant. They arrived at 2960 Osceola Street, Baton Rouge, Louisiana, at which time Fourrier and Thompson went to the front door, Adams and Monticello went to the south side of the house, Smith went to the north side of the house, and Wright to the rear of the house. After everyone was in place, Four-rier and Thompson knocked on the door and identified themselves as sheriff’s deputies with a search warrant. Fourrier and Thompson saw Michael Day, an occupant of the house, and another person through *1337 the window. The officers then forced entry with weapons drawn and found Michael Day sitting on a bed and the unknown person racing towards the rear of the house.
Fourrier told Thompson to watch Michael Day and he went after the unknown male. Fourrier rushed into the bathroom where the commode was flushing and the unknown male was trying to escape from the house through a window in the bathroom.
Fourrier testified that the unknown person had his head and one arm out of the window and that Fourrier identified himself as a deputy sheriff and told the person to stop and grabbed the person’s jacket with his left hand and attempted to pull him back in and a struggle ensued. The unknown person grabbed Fourrier’s right hand containing the deputy’s 32 cal. automatic pistol, and the gun allegedly accidentally discharged as Fourrier attempted pulling the person back into the bathroom.
Deputy Thompson arrived in the bathroom to assist Fourrier in removing the unknown man from the window. He noted that he and Fourrier were working against each other and backed off so that Fourrier could get a better grip on the individual who was struggling with Fourrier. Thompson then heard the gun discharge. After the discharge of the gun, Fourrier was able to pull the individual back into the room and the individual stated, “I give up.” The individual, identified as Larry Mitchel Boyd, was put against the wall where he was frisked, and at this time they learned Boyd had been shot in the back. Boyd was laid on the floor and an ambulance was requested.
Deputy Monticello heard the shot and went into the bathroom and saw Larry Mitchel Boyd lying on the floor. He checked and detected a pulse. He turned Boyd’s head to help him breathe while awaiting an ambulance called by the deputies.
Deputy Fourrier testified that a shell was placed in the chamber of the pistol and the safety was engaged while standing outside the residence and that he does not recall removing the safety nor did he consciously pull the trigger. He further testified that Boyd’s right hand grabbed his pistol causing it to fire.
Immediately after the shooting the district attorney’s office sent Hiller Moore, an investigator, to the scene. He swabbed the palms of Boyd, which evidence was submitted to Ronnie Jewell, a forensic scientist with the Louisiana State Police. The parties stipulated that Ronnie Jewell would testify that his examination of the swabs revealed the presence of gun powder on the palm of the right hand of Larry Mitchell Boyd.
At the conclusion of plaintiff’s case, defense counsel moved for a motion to dismiss on behalf of all defendants. La.Code Civ.P. Article 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and the law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render judgment until the close of all the evidence.
The standard in determining whether to grant a motion to dismiss is that the trial judge should weigh and evaluate all the evidence presented and grant a dismissal if the plaintiff has not established his case by a preponderance of the evidence. In the Matter of the Interdiction of John M. Aaron, 417 So.2d 105 (La.App. 3rd Cir.1982).
The trial court after considering plaintiffs’ evidence granted the motion to dismiss in favor of Kermit Smith and Jay Thompson.
The court further dismissed the case after trial against Michel Fourrier and the claim against Sheriff Elmer Litchfield.
Two questions need to be answered in order to determine if plaintiffs have the right to recovery under these circumstanc *1338 es. The first question is whether Deputy Thompson obtained the search warrant in good faith without the use of fraud, deceit or malice. The second question is whether or not unreasonable force was used in the execution of this search warrant.
I
Appellants contend that the use of facts from a previous search warrant in the obtaining of the instant search warrant establishes fraud, deceit and malice.
In Baskin v. Parker, 602 F.2d 1205 (5th Cir.1979), the court held an officer liable who secured the search warrant knowing that his informants were not credible and that the information given was based on personal grievances. Appellants have failed to present any evidence to prove fraud or malice other than the use of an artfully drawn affidavit previously approved by the Louisiana Supreme Court in State v. Anderson, 357 So.2d 547 (La.1978). Thus, this issue has no merit.
II
The search warrant was valid on its face, State v. Anderson, supra, and the trial court held that Deputy Fourrier was acting in good faith in his execution of the warrant. A search warrant is complete protection to a law enforcement officer acting without malice and in good faith in the execution of the warrant. Conques v. Fuselier, 327 So.2d 180 (La.App. 3rd Cir. 1976).
In the instant case, the officers identified themselves before making the forced entry. Upon entering, Boyd fled from the main room into the bathroom. Fourrier was in pursuit of Boyd without knowledge of whether he was armed, he was going to arm himself, or he was going to dispose of any evidence. When Fourrier entered the bathroom he found the toilet flushing and Boyd’s head and right arm extended out of the window in an attempt to flee.
Fourrier, with pistol in hand, attempted to bring Boyd back into the room still without the knowledge of whether he was armed. Evidence indicates that a struggle ensued and through the struggle Fourrier’s pistol discharged resulting in the death of Boyd. In the present case, the force used was not excessive under the circumstances. Thus, this issue has no merit.
Therefore, the judgments are affirmed at appellants’ costs, to be shared equally.
AFFIRMED.