580 So.2d 706 (1991)
Annie O'NEAL, et al.
v.
CHURCH'S FRIED CHICKEN, INC., et al.
No. 90-CA-1376.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
Madeleine Fischer, Donna E. Powe, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Church's Fried Chicken, Inc.
Robert W. Drouant, New Orleans, for Annie O'Neal.
Before SCHOTT, C.J., and BYRNES and WARD, JJ.
*707 WARD, Judge.
This appeal arises from a jury verdict in favor of the defendant, Church's Fried Chicken, Inc. The trial court made the verdict the judgment of the Court, denying plaintiff Annie O'Neal's claim for damages in excess of one million dollars for the death of her son, Samuel O'Neal.
Samuel O'Neal was killed while committing an armed robbery at a Church's Fried Chicken on Louisiana Avenue. In 1983, O'Neal entered Church's armed with a .22 caliber pistol and ordered the manager, Robert Henry, to hand over all the money in the cash register. Robert Henry complied. O'Neal then ordered another employee, Dwayne Thomas, to open a second register. Thomas was unable to open the register, as he was hired as a cook and did not know the sequence of keys that must be pressed to open a cash register. Fearing that O'Neal would kill Thomas, Robert Henry offered to open the second register. While Robert Henry was opening the second register and giving the money to O'Neal, Dwayne Thomas backed away and loaded a .25 caliber pistol he kept in his back pocket. Thomas approached O'Neal and ordered him to drop the money. Thomas later that evening described the situation:
"I told him I did not open the register, that I was only a cook in the place. He told me `you better find a way to open the register'. Then the manager Robert Henry told me to press the dark button on the register. I pressed the button and nothing happened and I told the guy with the pistol I did not know how to open the register. Then he said he was going to take me out because I would not open the register. That's when Robert said to him, `wait man, I will open it'. Then the manager went over to the other register and I moved back away from it. I had my pistol on me and it was in my back pocket, I loaded it and I went towards himthe man with the pistol. I told him to hold itto halt. I told him to drop the money. Then he started to mumble something, but I did not understand him. As he was mumbling the words, he moved towards the front door. By the time he reached the door with the pistol still in his right hand, he turned slightly as if to face me. That's when I shot him."
The police found O'Neal several blocks away, lying face down on the sidewalk. He had received a single gun shot wound in the upper back and was pronounced dead at the scene. Money in a white Church's bag and a .22 caliber pistol were found near O'Neal's body. After interviewing Robert Henry and Dwayne Thomas, the police classified the death as a justifiable homicide.
By the time this matter was set for trial the only remaining parties were Annie O'Neal and Church's Fried Chicken Inc.[1] After a two and a half day trial, the jury concluded that Dwayne Thomas was justified in shooting Samuel O'Neal.
Ms. O'Neal complains of numerous trial errors that she alleges influenced the jury to return a verdict in favor of Church's. First, Ms. O'Neal alleges the trial court erred by refusing to permit her expert, Dr. Richard Tracy, a pathologist, to fully express his expert opinion. Ms. O'Neal contends her expert should have been allowed to respond to the following hypothetical question.
"Q: .... If (you) were given (a) scenario where an individual was exiting a door with his back to the shooter, would that be consistent with the wounds that you found in Mr. Samuel O'Neal when you performed the autopsy? That's what is depicted in that photograph."
(Supplemental trial transcript p. 120)
Church's made an objection which was sustained. Although there is no record of the sidebar conference that follows, Dr. Tracy's role as an expert witness was apparently discussed.
*708 Because Ms. O'Neal attempted to have Dr. Tracy reconstruct the scene at the time of the shooting, particularly as to the standing position of Samuel O'Neal and the angle of the entry wound, the trial court ruled that Dr. Tracy was not qualified to offer that testimony because he was not a "forensic" pathologist, and the trial court limited Dr. Tracy's opinions to testimony concerning where the bullet came to rest. On the other hand, Church's expert, Dr. McCormick, a forensic pathologist, was allowed to testify as to the angle of entry. Dr. McCormick stated that the wound was consistent with Dwayne Thomas' statement that O'Neal was turning towards him when he was shot.
Although La.C.E. Art. 702 et seq. has generally relaxed heretofore stringent requirements before witnesses may qualify as experts, greatly facilitating the use of expert testimony, the trial court still retains broad discretion as to whether expert testimony should be admitted, particularly in jury trials. See La.C.E. Article 702, comment (d).
Dr. Tracy, as a pathologist with extensive experience in homicide investigations stemming from his years of employment, appears well qualified to have given expert opinion testimony. Yet, we cannot say the trial court abused its great discretion in limiting that testimony after qualifying Dr. Tracy as an expert. And even if it was error to exclude Dr. Tracys testimony, in light of the entire record, it was not reversible error.
In her next assignment of error, Ms. O'Neal argues that Church's reference to Samuel O'Neal's "twenty one arrests" constitutes reversible error because it put Samuel O'Neal's character at issue.
As a general rule, all relevant evidence is admissible. La.C.E. Arts. 401 and 402. When a petitioner makes a claim for damages for loss of love and affection and companionship by reason of the death of a son, evidence that would show the gravity and nature of the loss of a loved one is admissible, and plaintiff's witnesses were permitted to testify that he was a "good boy", and a "kind, well respected individual". The nature of that evidence may be closely akin to character evidence, but it is not the same. Character evidence relates to reputation of witnesses and their credibility, or the lack of it. La.C.E. Art. 608. But once evidence was introduced to show loss of love, affection and companionship, the defense could certainly cross-examine witnesses to show otherwise. Therefore, cross-examination that produced evidence showing a lack of love, affection and companionship was certainly admissible. Nonetheless, although relevant, some evidence may be excluded if the probative value is outweighed by the danger of unfair prejudice. La.C.E. Art. 403. Yet, this decision must be left to the sound discretion of the trial court, and clearly in this case the trial court did not abuse its discretion.
Ms. O'Neal, in her next assignment of error, objects to the phrasing of jury interrogatory number one asserting that it pretermitted the consideration of negligence.
Interrogatory No. 1 reads as follows: Considering all of the facts, the evidence and the law, was Dwayne Thomas justified in shooting Samuel O'Neal?
If your answer to Interrogatory Number 1 is "yes", you must not go any further, you work is done. Date and sign the form and return to the Court room. If your answer to Interrogatory Number 2 is "no", please go on to Interrogatory No. 2.
The Court gave as its first special jury charge the following:
"... Conduct which would otherwise be a tortious battery may be justified as self defense or in defense of others when such conduct is justified, there is no civil liability." (See Tr. Vol. 4, p. 34 and 35)
By giving this charge, the court adequately explained to the jury that if they found Thomas' actions justifiable, there would be no civil liability. This was not error.
Further, O'Neal's counsel previously approved the interrogatory. The record reveals that O'Neal's counsel was well aware of the phrasing of the first interrogatory and did not object to it specifically. (Volume *709 4, p. 6-13). The record is replete with objections and testimony regarding the other interrogatories, but O'Neal's counsel accepted interrogatory No. 1 and cannot for the first time object on appeal.
Ms. O'Neal, in another assignment of error, argues that the jury committed manifest error in finding Dwayne Thomas' actions justifiable. O'Neal alleges that her son was turning to leave Church's, and, therefore, Thomas used excessive and unreasonable force by firing at O'Neal.
Killing in self-defense is justifiable if one reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself. State v. Faulkner, 441 So.2d 721, 722 (La.1983); State v. Guinn, 319 So.2d 407 (La.1975). The jury had before them an audio tape of Thomas' rendition of the facts, the testimony of Mr. Henry, and the testimony of Church's expert whose opinion was that O'Neal was turning toward Thomas when Thomas shot him. The jury assessed the credibility of the witnesses and determined that Thomas' actions were justifiable. That verdict is not manifestly erroneous. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
We affirm the lower courts ruling but refuse to assess penalties for frivolous appeal. Plaintiff is assessed the cost of appeal.
AFFIRMED.
NOTES
[1] Samuel O'Neal's siblings were dismissed from this suit by consent judgment. Robert Henry, the manager of Church's, was also later dismissed from the suit. Dwayne Thomas died before trial.