jiWILLIAM A. CULPEPPER, Judge Pro Tem.
This is a suit for personal injury and property damages arising out of a two-vehicle collision. On June 28, 1991, Jimmie S. Hammond, while in the course and scope of his employment with Con Agra Broiler Company, Inc. (Con Agra), and while operating a Con Agra truck, crossed the centerline of Louisiana Hwy. 118 and crashed into the left side of a truck which Stanley Sattler was operating. Sattler filed suit against Hammond and Con Agra.
The parties stipulated to liability, and the case was tried before a jury on the issue of personal injury |2damages. It was not disputed that plaintiff-Sattler sustained injuries to his left wrist and hand in the accident. Plaintiff also asserted that he suffered stress, a myocardial infarction or heart attack, and depression caused by the accident or for which the accident was an aggravating or contributing factor. The jury awarded plaintiff $30,000 in general damages and $38,500 in special damages; the jury found that the myocardial infarction was not related to the accident of June 28, 1991.
Plaintiff appeals, alleging that (1) the trial court erred in refusing to allow Dr. George Seiden, plaintiffs treating psychiatrist who is board certified in psychiatry and neurology with a PhD in physiology, to testify about the medical effects of emotional and mental stress and strain on the human heart; (2) the jury erred in failing to find that the collision was one of the trigger events that contributed to plaintiffs myocardial infarction and increased his disability after the accident; and (3) the jury awarded inadequate damages and erred in failing to award plaintiff damages for his myocardial infarction.
GENERAL FACTS
Plaintiff, age forty-seven or forty-eight at the time of the accident, was self-employed as a logging contractor. On June 28, 1991, defendant-Hammond crossed the centerline into plaintiffs lane of travel and crashed into the left side of the eighteen-wheeler log truck which plaintiff was operating. Both trucks overturned.
Plaintiff sustained cuts on his left hand and torn ligaments in his wrist. He was also diagnosed with bilateral carpal tunnel syndrome in his left hand following the accident. Plaintiff eventually underwent surgery on his left hand and wrist to fuse wrist bones and release the |3carpal tunnel. He sustained a 20% permanent disability to his upper extremities.
Plaintiff also sustained cuts on his left elbow and shoulder as well as neck pain from the accident. However, these injuries apparently resolved themselves shortly after the accident.
Plaintiff contends that, following the accident, he began having nightmares and difficulty operating a vehicle. He testified he had flashbacks and became irritable. Plaintiff argues that as a result of the accident he experienced post-traumatic stress disorder, suffered a myocardial infarction and depression.
MYOCARDIAL INFARCTION
Plaintiff suffered a myocardial infarction on May 5, 1992, just over ten months after the accident. At trial, plaintiff sought to relate stress from the accident to the subsequent myocardial infarction. In support of his position, plaintiff sought to introduce the testimony of Dr. George Seiden on the effects of trauma induced emotional stress and strains on the human heart. Dr. Seiden, plaintiffs treating psychiatrist, is a medical doctor, a board certified psychiatrist and a neurologist with a PhD in physiology. (Dr. Seiden defined physiology as the study of the normal function of the human body.)
The trial court did not allow testimony from Dr. Seiden to be entered regarding the heart condition and the effects of stress thereon, finding that this was beyond the scope of Dr. Seiden’s expertise. Plaintiff contends that this was error.
LSA-C.E. art. 702 provides:
U“If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, *573 training, or education, may testify thereto in the form of an opinion or otherwise.”
Although LSA-C.E. art. 702 et seq. has generally relaxed heretofore stringent requirements before witnesses may qualify as experts, greatly facilitating the use of expert testimony, the trial court still retains broad discretion as to whether expert testimony should be admitted, particularly in jury trials. O’Neal v. Church’s Fried Chicken, Inc., 580 So.2d 706 (La.App. 4th Cir.1991) citing LSA-C.E. art. 702 comment (d). However, generally, the fact that a medical doctor is not a specialist in a particular field applies only to the effect or weight to be given such testimony, not to its admissibility. Matter of Aaron, 417 So.2d 105 (La.App. 3d Cir.1982); State v. Gremillion, 529 So.2d 497 (La.App. 3d Cir.1988), reversed on other grounds, 542 So.2d 1074 (La.1989). See also by example, Pereira v. Louisiana Coca-Cola Bottling, 620 So.2d 315 (La.App. 4th Cir.1993). We are of the opinion that the trial court should have allowed Dr. Seiden to testify on the effects of stress on the heart. The failure to do so was not harmless error. However, after a de novo review of the record, including Dr. Seiden’s proffered testimony, we agree with the jury that the evidence does not preponderate that the accident and resulting stress caused or contributed to the heart attack.
Apparently referring to studies indicating an increased incidence of heart disease, infectious disease, and death following stress and depression, Dr. Seiden stated that theoretically he would say that there is evidence that the accident could have caused or contributed to plaintiffs | ..¡heart attack. However, he also stated that he did not know whether the accident caused or contributed to plaintiffs heart attack, qualifying this answer by agreeing that no medical doctor could tell someone that. Dr. Seiden thought that the “literature” would indicate the stress of the accident increased plaintiffs risk of having a heart attack.
Dr. Mitchell Howard Weiss, the cardiologist who performed a balloon coronary angioplasty on plaintiff on May 5, 1992, testified that it is believed that a myocardial infarction occurs in the setting of coronary atherosele-rosis or a narrowing and hardening of the coronary arteries. Dr. Weiss testified that he suspected that plaintiff had begun to develop coronary arteriosclerosis at some point in time prior to the myocardial infarction and that on the day of plaintiffs myocardial infarction one of the arteriosclerotic plaques had ruptured or fissured which led to the acute development of an occlusive blood clot which caused the myocardial infarction.
Dr. Weiss was of the opinion that there are certain risk factors for the development of coronary arteriosclerosis and that most authorities in the field would feel that mental or psychological stress is not an established risk factor for coronary artery disease. Rather, he was of the opinion that mental or psychological stress was, at best, a possible, risk factor. Therefore, he concluded that the automobile accident did not cause the plaintiff to develop coronary arteriosclerosis. Dr. Weiss was of the opinion that there was a trigger that existed probably many years prior to “that” and “things” came together on May 5, 1992, to cause plaintiffs myocardial infarction. He did not think he could say one way or the other that mental emotional stress could accelerate, contribute to, or speed up coronary arteriosclerosis. However, he noted |¡“[ajnything’s possible.”
Dr. Henry Gorman Hanley, a cardiologist and chief of cardiology for LSU Medical Center, as well as chief of the cardiology section of the department of internal medicine for the medical school in Shreveport, was firmly of the opinion that plaintiffs myocardial infarction was not causally related to the accident. He did not think that it had been established that there is any relation between chronic stress and myocardial infarction but thought rather that it is a lifelong process of arteriosclerosis with a sudden event (usually the clotting off of a hemorrhage into a plaque in an artery) that causes death of the heart tissue. Dr. Hanley was of the opinion that plaintiff suffered a hemorrhage of a plaque in his coronary artery. He also noted that plaintiff had a number of risk factors for developing coronary artery disease: twenty pounds overweight, forty-nine years old, male, and on the occasion when measured, hypercholesterolemia.
*574 Dr. Dean Preston Sandifer, an internist who had seen plaintiff prior to the accident as well as on the day of the myocardial infarction, agreed that most authorities in the field would feel that mental or psychological stress is not an established risk factor for coronary artery disease. However, Dr. San-difer indicated later in his deposition that in certain situations, stress can be a contributor to health problems and that coronary artery disease is among the health problems to which stress can contribute.
In a personal injury suit, the plaintiff must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). None of the physicians concluded that, more probably than not, plaintiffs myocardial infarction was related to the accident. While Dr. Seiden indicated that “studies” or “literature” would | vindicate a link between the two and Dr. Sandifer was willing to state that in certain situations stress can contribute to coronary artery disease, we choose to give more weight to the testimony of Dr. Weiss, a cardiologist and the plaintiffs treating physician, who only acknowledged the possibility of a causal connection. In weighing opposing expert opinions, the trier of fact should consider the education and experience of the expert in the particular science or field, the reasons given in support of the opinion, and the other evidence which supports or detracts therefrom. Cockerham v. Atlantic Richfield Co., 615 So.2d 547 (La.App. 3d Cir.), writ denied, 623 So.2d 1303 (La.1993). We note that a plaintiff may be entitled to a presumption of causation upon showing that before the accident he was in good health but that commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the medical evidence shows a reasonable possibility of causal connection. See Dabog, supra. However, the plaintiff had experienced chest pain prior to the accident for which he was evaluated by Dr. Sandifer. Moreover, the myocardial infarction occurred just over ten months after the accident. Accordingly, we find that the plaintiff is not entitled to the presumption of causation.
We are of the opinion based upon the foregoing evidence that plaintiff has failed to prove by a preponderance of the evidence that the accident caused, aggravated or contributed to plaintiffs myocardial infarction. Thus, we award no damages in this regard.
DAMAGES
Plaintiff contends that the general and special damages awarded to him for 20% disability to his left hand and wrist were inadequate.
I «General Damages
The jury awarded plaintiff $30,000 in general damages. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), the Louisiana Supreme Court stated:
“The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb-an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.”
While on the low side, we find no abuse of discretion in the award of general damages.
Special Damages
The parties agreed to the sum of $11,052.18 for past medical expenses. Thus, $27,447.82 of the $38,500 special damages award was for special damages other than past medical expenses.
*575 Apparently the $27,447.82 award was for past loss of earnings or future loss of earnings or both. Plaintiff contends that this award is inadequate.
Plaintiff, his brother, and his brother-in-law own a logging business. Plaintiff continued working in the logging business following the accident. He missed work for surgery and doctor’s appointments only. He was still able to perform his supervisory duties and occasionally 19drive a truck and operate machinery, but testified that he was unable to perform light precise mechanical or heavy mechanical work after the accident. Dr. Clinton G. McAllister, the orthopedic surgeon who performed surgery on plaintiffs wrist and hand, was of the opinion that plaintiff would have a functional limitation concerning fine repetitive work and heavy gripping.
Dr. Melvin W. Harju, plaintiffs expert economist, calculated past loss and future loss of earnings greatly in excess of that awarded by the jury. Mark Dennis Thomas, a CPA called by defendants, explained that plaintiffs business’s gross income increased in the year of the accident (particularly in the months following the accident), that the total cost of repairs decreased, and that gross production was virtually the same as the previous year. It was suggested that a decline in gross income and production in the year following the accident was attributable to economic factors.
We do not know how the jury arrived at the amount which it awarded to plaintiff. Since the record supports that plaintiff is working and will be able to continue working but that he has been and will be unable to perform light precise and heavy mechanical work, the jury may have made an award for loss of earnings in that regard. We find no abuse of discretion.
DISPOSITION
For the reasons assigned, the judgment appealed is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.