# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1497

**RODNEY KNOX, ET AL.**

**VERSUS**

**CALCASIEU PARISH POLICE JURY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 03-231
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

**AMY, J., CONCURS IN PART AND DISSENTS IN PART AND ASSIGNS REASONS.**

**AFFIRMED IN PART; AMENDED IN PART AND, AS AMENDED, AFFIRMED.**

Frederick L. Cappel
Raggio, Cappel, Chozen & Berniard
1011 Lakeshore Drive - 5th Floor
Lake Charles, LA 70601
Telephone: (337) 436-9481
COUNSEL FOR DEFENDANT/APPELLEE:
    Calcasieu Parish Police Jury

Robert C. McCall
Baggett, McCall, Burgess, Watson & Gaughan
Post Office Drawer 7820
Lake Charles, LA 70606-7820
Telephone: (337) 478-8888
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Rodney Knox and Taylor Knox

**J. Gregory Bergstedt**
**The Bergstedt Law Firm**
**Post Office Box 1884**
**Lake Charles, LA 70602**
**Telephone:  (337) 436-4600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**American Southern Home Insurance Company and Jesse James,**
**d/b/a Jesse James Mobile Home Park**

THIBODEAUX, Chief Judge.

The plaintiff brought suit, individually and on behalf of his minor daughter, who suffered a laceration to her leg when she fell into a culvert while visiting a relative's mobile home. The trial court assessed fault for the child's injuries equally between the mobile home owner, who cared for the lawn surrounding the culvert, and the mobile home park owner, who leased the property to the mobile home owner. The court awarded $7,500.00 in general damages and $1,381.13 in medical expenses, but did not approve a surgical scar revision. The plaintiff appeals, alleging that the mobile home owner, who is a non-party, should not have been assessed any responsibility and that the damage award was insufficient. Because the evidence indicates the scar revision is necessary, we amend and, as amended, affirm. We award $8,530.00 in anticipated future surgical expenses and increase the general damages award to $12,500.00.

I.

**FACTS**

On the afternoon of January 18, 2002, six-year-old Taylor Knox and her mother, Jackie Knox, visited the mobile home of Ms. Knox's brother, Harry Hooper, and his wife, Stephanie Hooper. Taylor, her sibling, and other similarly aged children were playing in the yard in front of the mobile home, while Ms. Knox and Ms. Hooper were inside. Taylor entered the mobile home crying and told her mother that, while walking along the driveway to the mobile home, she slipped into the ditch and cut her left leg on a jagged piece of the exposed end of the metal culvert under the driveway.

Her mother brought Taylor immediately to the Women and Children's

1

Hospital in Lake Charles, where the four-centimeter laceration was treated and received nine stitches. She was instructed on proper care for the wound and released that evening. Taylor visited her pediatrician, Dr. Myriam Sayed, on January 21, January 25, February 1, and February 4, 2002. Dr. Sayed removed her stitches and referred her to the Sulphur Surgical Clinic, where she was seen by Dr. Walter Ledet and Dr. A. Kent Seale, both general surgeons. On February 2, 2002, she saw Dr. Ledet whose notes state:

> I saw Taylor in the office today. Local wound care is the only option we have at this point. A skin graft may be necessary in the future.

Taylor was also seen by Dr. Seale, whose records indicate:

> I saw Taylor Knox in the office today. The laceration to the middle third of the left lower extremity is healing by secondary intention. There is good escar [sic] which will eventually dislodge revealing a healed tissue beneath. The patient will scar. Should a scar revision be necessary, I would wait at least a year prior to pursuing.

Mrs. Knox testified that she told Dr. Seale that she was concerned because she felt that the skin in the center of the scar was thin, but that he told her that nothing could be done with the scar for at least another year. She testified that she was still concerned, and on September 15, 2003, she took Taylor to see Dr. Darrell Henderson, a plastic surgeon. Dr. Henderson provided a detailed report, in which he stated in his summary:

> The patient has a markedly disfiguring scar on her left leg. A surgical scar excision and revision can be done to improve the patient's left leg scar, but I believe she needs to reach an age where it is bothersome to her so she can put up with the very troublesome after course of total immobilization of the left leg for a period of six months. Cost estimates have been outlined.

Rodney Knox filed suit, individually and on behalf of Taylor, on January 14, 2003, against the Calcasieu Parish Police Jury and against the owner of the mobile

2

home park, Jesse James, and his insurer, American Southern Home Insurance Co. The trial court found in favor of the plaintiffs and assessed fault for Taylor's injuries as follows: no comparative fault was assessed to Taylor; no fault was assessed to the Calcasieu Parish Police Jury; fifty percent of the responsibility for the injuries was assessed to Harry Hooper, who was not a party to the suit; and fifty percent of the responsibility was assessed to Jesse James, as owner of the mobile home park in which the culvert was located. Regarding damages, the court accepted the assessment of Dr. Seale, and specifically rejected Dr. Henderson's recommendation. Further, the trial court did award $500.00 as the fee for the medical examination performed by Dr. Henderson. The court then awarded $1,381.13 for medical costs and $7,500.00 for pain and suffering. From this judgment, the plaintiff appeals.

## II.

## ISSUES

We will consider whether trial court erred:

1) in the apportionment of fault;

2) in awarding zero damages for the scar revision surgery; and,

3) in awarding $7,500.00 for general damages.

## III.

## LAW AND DISCUSSION

### Apportionment of Fault

The plaintiff alleges that the trial court erred in assessing fifty percent of responsibility for Taylor's injuries to her uncle, Harry Hooper, who owned the mobile home and rented property on which the culvert was situated. The plaintiff argues that Mr. Hooper should not have had any responsibility assigned to him

3

because he neither caused the damage to the culvert, nor had any duty to inspect or warn the mobile home park owner or the Calcasieu Parish Policy Jury of the defect. The plaintiff asserts in his brief:

> [T]here is no duty on a person who has knowledge of a defective condition to report it to the party responsible for correcting it absent certain exceptions not relevant to this case, i.e., if the person had created the defect and failed to report it or the person had some particular duty to report.

The defendants, however, suggest that Mr. Hooper did have a duty to report the condition of the culvert because he had custody, or garde, of the culvert and thus a "legal responsibility to keep his things in good condition to avoid harming others." The defendants assert that Mr. Hooper had actual control over the premises, including the culvert, and derived benefits from it so that "he was in the better position to detect, evaluate and eliminate the risk of harm arising in the thing and . . . his utter failure to do so was a breach of duty under the facts of this case."

In its written reasons for judgment, the trial court first determined that neither Taylor nor the Calcasieu Parish Police Jury was at fault in causing her injuries. However, the trial court did find Mr. James responsible, noting that he clearly owned the ditch in question and that he admitted to walking the mobile park daily to check for dangerous conditions. Mr. James had owned the property for nineteen years, and the trial court concluded that "he should have known of [the condition of the culvert] and could have taken steps to prevent the injuries." Therefore, the court found that Mr. James bore some of the responsibility for Taylor's injuries; however, the court continued as follows:

> The reason this court says "James bears some responsibility" is that this court does not believe James should bear **all** responsibility. The child's uncle, Hooper, testified that in the 9 years that he resided there, the condition of the culvert was the same when he moved in and when he left. This court does not believe that there

4

was any evidence that reflects that Hooper created the dangerous condition, but that he certainly was in the best position to do something about it. He never complained about it to anyone, either James, the park manager, nor CPPJ, and he was the one who cared for the ditch himself. Hooper's awareness of the condition of the culvert without notifying anyone put a duty on him to do something about it. Accordingly, this court casts 50% of the responsibility for the injuries on Hooper, a non-party to the lawsuit.

(Emphasis in original).

Louisiana Civil Code Article 2315(A) sets forth the general negligence law of Louisiana, stating in relevant part "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The negligence cause of action described in La.Civ.Code art. 2315 is analyzed under the duty/risk analysis, in which the plaintiff must prove that "the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 4 (La. 11/30/99), 752 So.2d 762, 765. The Louisiana Supreme Court has recognized that every person has an "almost universal" legal duty to conform his or her actions "to the standard of conduct of a reasonable person in like circumstances." *Ramey v. DeCaire*, 03-1299, p. 8 (La. 3/19/04), 869 So.2d 114, 119. In determining whether a legal duty exists and the extent of that duty, a court must consider the relationship between the parties, as well as the facts and circumstances particular to the matter. *Id.*

In the present case, the trial court noted in its reasons for judgment that Mr. Hooper was solely responsible for maintenance of the area surrounding the culvert, and the record indicates that he had held that responsibility for the nine years he lived on the property. The trial court also pointed out that during that nine-year

5

period, Mr. Hooper had never reported the dangerous condition of the culvert to the mobile park manager, owner, or the Calcasieu Parish Police Jury. Mr. Hooper's own testimony suggested that his failure to report the damage was not due to a lack of opportunity, as he stated that he had spoken to the mobile park manager "on a fairly regular basis." Mr. Hooper also testified that although Ms. Knox brought her children over often to play with the Hooper children, he had never warned any of the children who played in the yard about the condition of the culvert. He stated that he never attempted to post any kind of warning and that it "[w]asn't [his] place to" protect, replace or repair the damaged culvert.

Based on these circumstances, we find that the trial court was not manifestly erroneous in finding that Mr. Hooper breached his duty to act reasonably by his failure to take any action regarding the damaged culvert. Mr. Hooper had lived on the property for nine years and cared for the lawn, including the area surrounding the culvert. He was more than a mere witness to the condition, as the plaintiff alleges, and was unreasonable in his failure to, at least, warn the mobile park manager, the mobile park owner, the Calcasieu Parish Police Jury, or even the children playing in the vicinity that the culvert was in a deleterious condition and was dangerous.

### *Dr. Darrell Henderson's Status*

The trial court characterized Dr. Henderson's examination as an "independent medical examination." The plaintiff generally asserts that Dr. Henderson was not an independent medical examiner, but was a treating physician whose recommendations warranted greater weight by the trial court. After reviewing the record, we agree. In its written reasons for judgment, the trial court mischaracterized the status of Dr. Henderson. For medical purposes, Taylor's family sought a second opinion from a specialist after seeing the general surgeon, Dr. Seale.

6

The record does not indicate that Dr. Henderson's opinion was sought out for litigation purposes. Rather, a mother's genuine concern for her daughter's scarring prompted the visit and examination. Furthermore, the court did not order an independent medical exam as set forth in La.Code Civ.P. art. 1464. Therefore, Dr. Henderson is not an independent medical examiner as contemplated by La.Code Civ.P. art. 1464, which states:

> When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law. In addition, the court may order the party to submit to an examination by a vocational rehabilitation expert or a licensed clinical psychologist who is not a physician, provided the party has given notice of intention to use such an expert. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

### *Dr. Darrell Henderson's Recommendation*

Dr. Henderson stated that the procedure would be elective in nature while Taylor is a child. However, if she chooses not to undergo the procedure at all, it is likely that the procedure will be medically necessary after thirty or forty years. He provided a cost estimate for the surgery, stating that the surgery fee would be $2,300.00; the registered nurse surgical assistant would be ten percent of that fee; and the outpatient operating room, anesthesia, and laboratory expenses would be approximately $5,500.00 to $6,500.00.

Although Dr. Seale stated that Taylor's scar was "not dramatic" and that he saw no reason for revision, there is little support for this subjective conclusion.

7

We also note that Dr. Seale did report that "[t]he patient will scar." Therefore, there is no dispute that scarring exists. Dr. Henderson, however, provided a detailed analysis of the treatment needed, and his reasons for his assessment in his report. Furthermore, as a plastic surgeon Dr. Henderson is specialized with this type of scarring.

> As a general rule, the treating physician's testimony should be given more weight than that of a doctor who examines a claimant for diagnostic purposes only, and the testimony of a specialist is entitled to greater weight than that of the general practitioner when the subject at issue involves the particular field of the specialist.

*Clark v. State Farm Ins. Co.*, 520 So.2d 860, 864 (La.App. 3 Cir. 1987). We award $2,300.00 for Dr. Henderson's surgical fee; $230.00 for the nurse's fee; and, $6,000.00 for the anticipated laboratory expenses.

### *General Damages*

For his final assignment of error, the plaintiff asserts that the trial court erred in awarding $7,500.00 in general damages for Taylor's pain and suffering. The plaintiff alleges that the figure does not sufficiently account for the "markedly disfiguring scar" and six months of immobilization required for a surgical scar revision.

The standard of review for an award for damages is set forth in *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70,74 (quoting *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 335 (La.1976)):

> Before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

In the present case, the trial court awarded the plaintiff $7,500.00 in general damages for Taylor's injury. After reviewing the record, we find that the trial court abused its discretion for failing to consider Dr. Henderson's findings.

As stated, Dr. Henderson's assessment should have been taken into consideration as a specialized, treating physician. He outlined a cost estimate for the surgery and other necessary expenses. In accordance with his analysis, the damages should account for the six-month period of immobilization following the scar revision surgery. We, therefore, increase the general damages award to $12,500.00 to account for pain and suffering associated with the scar revision surgery.

IV.

**CONCLUSION**

For the foregoing reasons, the trial court is affirmed with respect to allocation of fault. We amend the award of general damages and increase it to $12,500.00 and additionally award $8,530.00 for future medical expenses. All costs of this appeal are assessed against the defendant, Jesse James, d/b/a Jesse James Mobile Home Park.

**AFFIRMED IN PART; AMENDED IN PART AND, AS AMENDED, AFFIRMED.**

9

NUMBER 04-1497

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

RODNEY KNOX, ET AL.

VERSUS

CALCASIEU PARISH POLICE JURY, ET AL.

AMY, J., concurring in part, dissenting in part.

Although I agree with the majority regarding the trial court's assessment of fault, I respectfully dissent from the majority's decision to include an award for future medical expenses and increase the award for general damages. In my opinion, the trial court was free to exercise its wide discretion in determining which expert's recommendations would form the basis of its decision, and did not commit manifest error in giving more weight to the opinion of Dr. Seale than to that of Dr. Henderson.

Although Dr. Henderson is a plastic surgeon and the other physicians who treated Taylor are general surgeons, the factfinder must determine which evidence is most credible when the testimony of expert witnesses differ. *Taylor v. State, through Dep't of Transp. & Dev.*, 03-219 (La.App. 3 Cir. 6/23/04), 879 So.2d 307, *writ denied*, 04-1887 (La. 10/29/04), 885 So.2d 595. If "a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 845 (La.1989).

In my opinion, the record indicates that Taylor met with Drs. Ledet and Seale at the Sulphur Surgical Clinic on a few occasions beginning approximately one month after her injury until her discharge on June 4, 2003. However, she met with Dr. Henderson on only one occasion, which was more than a year-and-a-half after her injury and approximately nine months after this suit had commenced. Although he

suggested that Taylor may need a scar revision surgery in the future, Dr. Henderson did not initiate any treatment or suggest any specific follow-up schedule for her in the formal report he sent to the plaintiff's attorney. Consequently, I believe that the trial court was not clearly wrong in according more weight to the opinion and recommendations of Dr. Seale, who is a specialist and a treating physician, than Dr. Henderson.

In addition to awarding the plaintiff $8,530.00 in future medical expenses for the scar revision surgery, the majority opinion also increases the general damage award from $7,500.00 to $12,500.00, to account for a six-month immobilization period following the surgery. Because I do not conclude that this court should reverse the trial court's decision regarding future medical expenses, I do not believe that the trial court's award of general damages should be disturbed. Accordingly, I respectfully dissent from the award of future medical expenses and the increase in the general damage award.